*In Re* JESSE SCOTT'S ACCOUNT, PETER JOHONNETT, JR., *App't.*

*Administrator. Probate Court. Guardian. Principal and Surety.*

When an administrator has funds in his hands for distribution, he may pay the same to those entitled to them without an order of the probate court to that effect.

Where in such a case the administrator is also guardian of the heirs to the funds he may charge himself with the funds as guardian without an order of the probate court, and this will be a sufficient accounting for the same as administrator.

A surety on a guardian's bond cannot be a party to the accounting of his principal either in the original proceeding or by way of petition for revising such accounting and the judgment and order of the court upon it.

But in case of fraud the surety would not be without remedy.

APPEAL from the probate court. The appeal was taken on the decision of the probate court in refusing to revise the account of a guardian on the application of a surety on the guardian bond.

It appears that prior to 1853, Jesse Scott was administrator on Timothy Patterson's estate, and on the 18th day of October, 1853, settled his administration account, and there was found in his hands $850., $700. of which was decreed to two heirs of Patterson, minors, and $150. set aside for the support of one of these heirs until seven years old. On that day Scott, the administrator, was duly appointed guardian of the heirs, and gave bonds in due form of law, with Peter Johonnett, Jr., as surety. Nothing further was done until May 13th, 1862, when the guardian was cited in to render his account. No part of the $150. having been paid for the support of the minor child under seven years of age, Scott charged himself with the same and interest in his guardian account, and the same was approved and ordered by the probate court to be paid to L. F. Aldrich, who, upon the resignation of Scott as guardian, on the 13th day of May, 1862, was duly appointed guardian in his place, and assumed the trust, and afterwards commenced a suit on the guardian bond, in the name of the probate court, against Scott and Johonnett, Jr., which suit is now pending in court. After the commencement of this

suit, Johonnett made his application to the probate court for a revision of Scott's guardian account, on the ground that there was error in his account, in that he had charged himself as guardian with $150. and interest, which was not in his hands as such guardian.   At the hearing on said application, September 8th, 1862, the probate court refused to grant the revision, and the applicant appealed to the county court.   On entering the case in the county court, Scott moved to dismiss the suit for the reason that the said Johonnett was not a party to the original proceedings in the probate court.   The court *pro forma* overruled the motion, and the accounting was opened, the parties consenting that the court should try the case instead of sending it to a commissioner to take the account.

The counsel for the appellant insisted that the said $150, was at the time of the settlement of Scott's guardian account in 1862, in Scott's hands as administrator and not as guardian, and could not properly be charged against him in his guardian account, especially as there had been no settlement of his administration account since he was ordered to retain it as administrator for the support of said heir under seven years of age, and no order upon such settlement of his administration account to transfer it to his guardian account, and the court, as matter of law, so decided,— the counsel on the other side claiming that it was properly charged against Scott in his guardian account.

The court in accordance with the foregoing decision, reversed the decree of the probate court and opened the account according to the prayer of the petition, and disallowed the said $150. and interest on the same.   Aldrich, the present guardian, was duly notified of the appeal, but did not appear.

The counsel for Scott excepted to the decision of the court in overruling the motion to dismiss, and in reversing the decree of the probate court, and in disallowing the said $150. and interest thereon.

*Wing, Lund & Taylor*, for Scott.

We insist that the court below erred in the following particulars :

In Re Scott's Account.

1. That the decree of the probate court in this case upon the item presented and passed upon by the court and unappealed from, is conclusive upon all persons and cannot on the application of any party be set aside or revised. *Stowe, App't.* v. *Peasley's Estate,* 28 Vt. 716, and cases cited.

2. That if it could be by any party, the surety of the guardian is not a proper person to make the application, he cannot be treated as a party and his only remedy is in chancery on proof of fraud. 1 D. Ch. 37.

3. That the money was legally in Scott's hands as guardian and not as administrator and his guardian bail is liable. *Winship* v. *Bass et al.,* 12 Mass. 199 ; *Ipswich Manf'g Co.* v. *Strong,* 5 Met. 310 ; *Probate Court* v. *Merriam,* 8 Vt. 234 ; *Wilson* v. *Soper,* 13 B. Mun. (Ky.) 411 ; *Mattoon* v. *Cowing et al.,* 13 Gray, 387 ; *Warwick et al.* v. *The State,* 5 Porter, (Ind.) 350 ; *State* v. *Tunnell,* 5 Harrington (D. C.) 94.

*Peck & Colby,* for the apellant.

The item of $150. charged in the account of Scott as guardian was improperly so charged, it was reserved in his hands as administrator for support of minor children, as provided by statute. G. S. ch. 57, § 4, ch. 51, § 1.

The surety is interested in the order, and has right of appeal, G. S. ch. 48, § 30.

BARRETT, J. It is understood from the case that the children —wards of Scott—were entitled to the $150, which had been assigned under the statute for the support of the child under seven years of age ; and that if, on that child's arriving at that age, an order of distribution had been made pursuant to § 4, ch. 58, G. S., that money would have been distributed and ordered to be paid to said children. It is also understood in the case that nothing was left to be done in reference to Patterson's estate except the administration of that money for the support of said child, and its distribution to said children on that child's becoming seven years old.

Probably the administrator could not have been subjected to

an action for that money till he had been ordered by the probate court. But it seems that if in point of fact he had voluntarily paid it over to the parties entitled without any order of court, it would have constituted a good accounting by him as administrator. If some other person had been guardian, and Scott had paid it to him as such, it would have operated not only to satisfy any liability Scott was under as administrator, but at the same time to have charged the guardian with liability for it.

It certainly would have been the duty of such guardian to take action and proper measures to have said money accounted for and paid over to him on the arrival of said child at the age of seven years. He might apply to the administrator directly for the voluntary payment without invoking the order of the probate court, and if paid, all the purposes of such order would be answered. If not paid, then he would have occasion, and it would be his duty, to resort to such orders, as necessary to entitle him to use compulsory means for obtaining the money. But if in fact the money should come into his hands, which it was his duty to obtain and hold as guardian, certainly he would be accountable for it, and liable by action if he should fail to hold and pay it out. Upon these propositions no doubt could seem to exist.

The main purpose of the statute in providing for the order of distribution, seems to be to answer the just accountability to the party entitled for the money thus being in the hands of the administrator. When that end has been accomplished by his voluntary action there would seem to be no occasion for resorting to the court for an order in that behalf. Another purpose of that provision seems to be to enable the administrator to protect himself, under an order of the court, against any claims that might be made on him for funds of the estate in his hands. If he should see fit to take the risk of disposing of the funds without the shield of such order and no claim should be made upon him by any person otherwise entitled to those funds, and in point of fact he had paid them over to the person entitled, and to whom they would have been ordered to be paid, it is difficult to see on what ground the transaction can be called in question,

Now to apply these views to the case in hand: It being assumed that the guardian as such ought to have procured the payment of the funds to himself by the administrator, was it legally competent for Scott, holding the offices both of administrator and guardian, to treat the funds as being in his hands in the character in which it was his duty to hold them?

In other words was it not competent for him to say with himself, " as guardian, it is my duty to obtain and hold that money for my wards; and as there is no claimant to question the right of my wards to it, I have no occasion to ask for an order of the court in that behalf. I will assume the risk, as administrator, of passing the money to my account as guardian, and in accounting for it as such I shall at the same time, show a good accounting for it as administrator?" We think it was; and that when he charged himself with the money in his hands his liability for it as guardian became perfected, and that therefrom would flow all the legal consequences of default of duty as guardian in not paying it over to the party legally entitled to claim it of him. His bond as guardian would be held to respond for such default, and in such event his surety would be answering only to the liability assumed by becoming surety.   1 D. Chip. 37.

There might be a case of fraud and collusion in which the surety would be entitled to protection against the acts of his principal; but in this case there is no evidence or suggestion of it.   The petitioner stands merely upon the technical point that Scott treated the money in his hands, as guardian, in rendering his account, without a previous order of the court upon him as administrator, to pay it over to himself as guardian, and claims that until such order is made he is compellable, on behalf of his surety on his guardianship bond, to hold it in his office and character of administrator.

We think the petitioner cannot be sustained in that position. Several of the cases cited in argument are applicable in principle to the intent that the surety is properly subjected on his bond in this case.

So we think the judgment of the county court was erroneous in this respect.

But in another view we think the motion to dismiss should have been sustained.

Whatever may be the cause and ground on which the probate court may be applied to by petition to revise their judgments, and correct errors therein, it seems to us that none but persons who are entitled to become and act as parties in the original proceeding in which the judgment was rendered can be allowed to invoke that court to revise such judgment. Certainly there is no statutory provision in that behalf, and the principle upon which it has been done, as being an inherent right and duty in the court to exercise such revisionary power in certain cases, has never been extended by any of the adopted cases to allowing a surety on a bond like the present or analogous to it, to become a party to the accounting of his principal, either in the original proceeding, or by way of petition for revising such accounting and the judgment and orders of the court upon it.

As before remarked a surety would not be without remedy in case of fraud against him—by appealing to some proper forum—but where there is no imputation of fraud it would be opening a new door of access to the probate court to hold that in this case the petitioner is *rectus in curia*.

Judgment reversed, petition dismissed with costs, and case to be certified to the probate court.