## GEORGE W. GERRISH *vs.* JOHN GARY.

Middlesex. Jan. 14. — March 3, 1876. COLT & ENDICOTT, JJ., absent.

The town of Charlestown in 1640 established a ferry across Mystic River, both landing places being upon the town's territory, and constructed and afterwards maintained ferry ways upon each side of the river across the flats from high to low water mark for the accommodation of travel across the ferry. Certain lands on each side of the river, together with "the beach leading from the upland to the ferry ways," and "the ferry ways on each side of the river," were conveyed by the town in 1755 to an individual, and reconveyed by him in 1784 to the town. In 1788, after the building of Malden Bridge across the river, just west of the ferry way, the town conveyed "the old ferry ways on the flats the southeasterly side of Malden Bridge on both sides of channel." The ferry ways from high to low water mark were permanent structures of stone and wood. *Held,* that this conveyance included the land under and used with the ferry ways between high and low water mark, and that the easterly boundary line ran from the upland, parallel with the general course of the ferry way, to low water mark.

GRAY, C. J. This is a writ of entry to recover a parcel of flats in Charlestown, lying on the northerly side of the Mystic River, and westerly of a straight line, drawn from a stone post at high water mark to low water mark at a point sixty-eight feet east of Malden Bridge, very nearly parallel with the bridge, and substantially on the easterly line of the old ferry way. It is admitted that the stone post is the bound between the parties at high water mark; and the question is, whether the dividing line

across the flats is to be run, as the demandant contends, at right angles with a straight line drawn according to the general course of the shore at high water mark, which would include a parcel of flats west of the old ferry way; or, as the tenant contends, straight across the flats at low water mark in substantial accordance with the easterly side of the old ferry way.

The demanded premises were within the original bounds of the town of Charlestown, which might appropriate them to public uses or grant them in fee to individuals, at least after the passage of the ordinance of 1647. 1 Mass. Col. Rec. 106, 172. *Boston* v. *Richardson*, 13 Allen, 146, 150, and 105 Mass. 351, 356. *Lynn* v. *Nahant*, 113 Mass. 433.

The records introduced by the tenant show the following facts: In 1640 the town established, and for more than a century afterwards maintained, a ferry at this place, known as Penny Ferry. In 1648 the town ordered "the ways to be made passable for people to go to the boats at the low water mark," and that there should be a causeway made at the ferry.

On February 7, 1725–26, the town "agreed with Samuel Sweetser to have a lease of the northerly side of Penny Ferry for twenty-five years, he paying yearly five shillings for the use of the town, and he is to make and maintain good and sufficient ways from high to low water mark." Samuel Sweetser having surrendered his lease, the town on March 6, 1726–27, made a similar lease to Joseph Frost, and voted to give him "something towards the making a causeway across the flats on the north side of Penny Ferry;" and on May 15, 1727, voted to allow him forty pounds "towards the erecting a causeway across the flats on the north side of Penny Ferry, upon the condition that the said causeway be a substantial way and of a good width and to the full satisfaction of the selectmen." In 1751 Frost gave up his lease, in consideration of a sum of money paid him by the town, pursuant to an award of arbitrators.

In 1755 the town voted to sell and convey to Stephen Sweetser certain lands on each side of the river and the ferry ways on both sides. The deed from the town to him is not produced, but its contents may be inferred from a mortgage from him to the town in the same year, describing certain lands by metes and bounds, "together with the beach leading from the upland to

the ferry ways between Thomas Jenner's marsh and said river with the ferry ways on each side of the river." In 1784 he re-conveyed the same land to the town, "together with the beach leading from the upland to the head of said ferry ways, and the ferry ways on each side of the river, as they are now lying and used."

In 1788 the town conveyed to Henry P. Sweetser a piece of land north of Mystic River and east of Malden Bridge, "also the beach adjoining the premises aforesaid, and the old ferry ways on the flats the southeasterly side of Malden Bridge on both sides of the channel." The title thus conveyed has come by mesne conveyances to the tenant.

The conveyances of the " ferry ways," which were permanent structures of stone and plank, clearly included the land under them and used with them. *Wooley* v. *Groton*, 2 Cush. 305. *Johnson* v. *Rayner*, 6 Gray, 107, 110.

It appears by the report that the old planks which formed the upper end of one of the ferry ways were upon the line claimed by the tenant, and that the stones and other materials of the causeway extending to low water mark were but a few feet west of this line. The inference is inevitable that the intention of the grants, under which the tenant claims title, was that the boundary line upon the east should run from the monument at the upland, parallel with the general course of the ferry way and of the bridge, to low water mark. *Valentine* v. *Piper*, 22 Pick. 85. *Piper* v. *Richardson*, 9 Met. 155. *Drake* v. *Curtis*, 9 Cush. 446, note. *Attorney General* v. *Boston Wharf*, 12 Gray, 553.

None of the records introduced by the demandant before 1799 are shown to have included these flats. It follows that the de-mandant shows no title, as against the earlier title of the tenant, to any part of the demanded premises.

*Judgment for the tenant.*

*J. G. Abbott*, for the demandant.
*T. H. Sweetser*, for the tenant.