In the Matter of the Appraisement of certain Legacies and the Assessment of Collateral Inheritance Taxes thereon under the Last Will and Testament, and Codicil thereto, of JOHN GUY VASSAR, deceased.

Under the provisions of the Collateral Inheritance Tax Act (Chap. 713, Laws of 1887), it is only the property of which a person died seized or possessed, which is subject to taxation; the increase or interest thereafter obtained from such property is not included, and may not be taxed.

*It seems*, that the tax imposed by said act becomes due and payable immediately upon the death of the decedent, and that property liable to taxation should be appraised and the tax assessed as soon after such death as practicable.

The exemption in said act (§ 1) of "the societies, corporations and institutions now exempted by law from taxation" is not to be confined to those bodies which enjoy complete immunity from taxation as to all property which they now have or of which they may at any time become possessed.

Where, therefore, legacies were given to corporations which were by statute exempted from taxation upon all the property they were authorized to take and hold, *held*, that the legacies were not liable to taxation under said act; that it was to be assumed the beneficiaries would not exceed their corporate powers and take more property than was authorized, and if they had power to take the whole or any part of the bequests to them respectively they would be exempt from taxation.

Another legatee was a "Home for Aged Men," incorporated under the general act for charitable purposes. Its certificate of incorporation provided that its object should be "the support of respectable, aged, indi-

gent Protestant men who are unable to support themselves, and who have been actual residents of the city of Poughkeepsie for five years next preceding the application for such support." Under its by-laws, an entrance fee is charged those seeking its benefits. *Held*, that said home was an alms-house within the meaning of the Revised Statutes (1 R. S. 388, § 4), and so exempt from taxation; that the charges authorized to be made by the by-laws did not operate to deprive it of the exemption to which it otherwise would be entitled; and that, therefore, the legacy was not taxable.

*In re Keech* (26 N. Y. S. R. 433; 32 id. 227); *In re Lenox* (9 N. Y. Supp. 895); *In re Vanderbilt* (10 id. 239), overruled.

*In re Vassar* (58 Hun, 378), reversed.

(Argued March 20, 1890; decided April 21, 1891.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 8, 1890, which affirmed an order of the Surrogate's Court of Dutchess County.

The nature of this proceeding and the facts, so far as material, are stated in the opinion.

*Joseph H. Choate* for Vassar College appellant. As it appears from this record that the subject-matter of the present tax, namely, the gifts to Vassar College and other legatees, made in and by the will of John Guy Vassar, deceased, was still in litigation, at the time of the commencement of the proceeding, it not having been then determined that the legatees would ever receive one dollar of such gifts, the present proceeding was prematurely brought, and clearly has no substantial foundation on which to rest. (Laws of 1887, chap. 713, § 13.) In any event, all of the property of Vassar College is by law generally exempted from all taxation, and, therefore, from the tax imposed by the act of 1887. (Laws of 1862, chap. 39 ; Laws of 1861, chap. 2, § 1 ; *In re Herr*, 22 N. Y. S. R. 905 ; *In re McPherson*, 104 N. Y. 317 ; *In re Enston*, 113 id. 174, 177 ; *Hartranft* v. *Weigman*, 121 U. S. 609.) The necessary effect of chapter 553, of acts of 1890, is to relieve the appellant from the collateral inheritance tax imposed by the act of 1887. (Laws of 1887, chap. 713, § 13 ; *In re B. H. & E. R. R. Co.*, 9 Blachf. 418.)

*C. Swan* and *R. E. Taylor* for Vassar College, appellant. Vassar College was exempt by law from taxation. (1 R. S. chap. 15, art. 2, § 36 ; Id. chap. 13, § 4 ; Laws of 1861, chap. 2; Laws of 1862, chap. 39, § 1 ; Laws of 1840, chaps. 318, 267.; Laws of 1841, chaps. 245, 261 ; Laws of 1855, chaps. 432, 805.; Laws of 1889, chap. 139, § 1, subd. 4 ; Laws of 1890, chap. 398.) Corporations exempt under the Collateral Inheritance Act are not only those declared exempt by their charters, but also such as are exempted by general statute. (*In re Miller*, 5 Dem. 132 ; *In re Hunter*, 11 N. Y. S. R. 704 ; Laws of 1890, chap. 398 ; Laws of 1839, chaps. 139, 191.) If under the statutes above cited, Vassar College cannot take and hold the legacies given by John Guy Vassar's will, then these legacies are not chargeable in this proceeding with any collateral inheritance tax upon or by reason of such nominal legacies. If the college can take and hold these legacies, then by the other statutes above cited as to college exemption (§ 1, chap. 39, Laws of 1862), these legacies are exempt from that tax. (*Betts* v. *Betts* 4 Abb. [N. C.] 317.] The fair construction of the charter of Vassar College (Laws of 1861, chap. 2, §§ 1, 8,) is that the college is empowered to take and hold a disposable interest, that is, as absolutely its own, and over and above, and independent of any property Matthew Vassar might give it, real or personal property, the yearly income or revenue of which shall not exceed the value of forty thousand dollars. There is no limitation as to the amount of trust property the college may take and hold, nor as to the amount Matthew Vassar may give it. Neither are to be reckoned in ascertaining the income of forty thousand dollars. The College Exemption Act, applies to the enabling act, with this construction of it. (Laws of 1862, chap. 39, § 1 ; *Betts* v. *Betts*, 4 Abb. [N. C.] 317.) Only the market value of the legacies at the death of the testator could be taxable. It was, therefore, an error for the surrogate to order a tax upon " all increase of the said residuary legacies now accrued and hereafter to accrue since the death of the testator." (*In re Enston*, 113 N. Y. 177 ; Cooley on Tax. [2d ed.] 275 ; *U. S.* v. *Wigglesworth*, 2 Story, 373 ;

*Powers* v. *Barney*, 5 Blatch. 203; *United States* v. *Watts*, 1 Bend. 583; *Doe* v. *Smith*, 8 Bing. 152; *Green* v. *Holloway*, 101 Mass. 248; *Catlin* v. *Trustees, etc.*, 113 N. Y. 133; *Sherrill* v. *Christ Church*, 121 id. 701; *Commonwealth* v. *Freedley*, 21 Penn. St. 36.)

*Allison Butts* for Vassar Brothers Hospital, appellant. This tax is a special tax and the act is to be construed most strictly against the state and most favorable to the taxpayer. (*In re Enston*, 113 N. Y. 177.) By the New York statute (§ 1) the tax is imposed upon all property which shall pass by will or the intestate laws of the state, " other than to or for the use of * * * the societies, corporations and institutions now exempted by law from taxation." (*In re Enston*, 113 N. Y. 178.) The societies exempted from the operation of the law are not simply those bodies which enjoy complete immunity from taxation as to all their property. (55 Hun, 167; *Sherrill* v. *Christ Church*, 121 N. Y. 701; R. S. chap. 13, § 4; *In re Herr*, 55 Hun, 167; *In re Curtis*, 25 N. Y. S. R. 1028.) This institution is also exempt from this tax by section 4, title 1, chapter 13, subdivision 4 of the Revised Statutes which exempts every poor-house, alms-house, and house of industry. (*Assn. for Col. Orphans* v. *Mayor, etc.*, 104 N. Y. 581; *In re Herr*, 27 N. Y. S. R. 591; *In re Lenox*, 31 id. 959; *In re Curtis*, 25 id. 1028.) The order of the surrogate is erroneous in levying a tax upon the increase of the said residuary legacies accrued and hereafter to accrue since the death of the testator or otherwise, and which the surrogate directs to be ascertained and determined upon the accounting of the executors. (*In re Leavett*, 22 N. Y. S. R. 83; 4 N. Y. Supp. 179; *In re Peck*, 30 id. 209, 465; *Commonwealth* v. *Freedley*, 21 Penn. St. 36.)

*Jno. P. H. Tallman* for Vassar Brothers Home, appellant. Alms-houses and poor-houses and their personal property are exempted by law from taxation. (Laws of 1866, chap. 136; 1 R. S. [6th ed.] § 5, subd. 4.) Institutions now

exempted by law from taxation are not subject to the tax imposed on gifts by will. (Laws of 1887, chap. 713, § 1.) Vassar Brothers Home is exempt by law from such tax. (*C. O. Asylum* v. *Mayor, etc.*, 104 N. Y. 581; *In re Hunter*, 6 Dem. 154; *In re Curtis*, 25 N. Y. S. R. 1028.) The act of 1890 is in harmony with pre-existing law and is declaratory of it, and by it the home is exempted. (Laws of 1890, chap. 398.) On the theory of the orders appealed from it was error not to exempt $500 of these legacies from the duty or tax. (Laws of 1887, chap. 713, § 1.)

*Robert F. Wilkinson* for respondents. Neither of the appellants is exempted from taxation within the meaning of the Collateral Inheritance Tax Act, and each of them is liable to be taxed upon its legacy as provided by that statute, the exemption intended being a general and complete exemption from taxation of all the property of the corporation. (Laws of 1887, chap. 713; *Buffalo Cemetery* v. *City of Buffalo*, 46 N. Y. 506; *Roosevelt Hospital* v. *Mayor, etc.*, 84 id. 115; *People ex rel.* v. *Comrs.*, 76 id. 64; 82 id. 465; *People ex rel.* v. *Davenport*, 91 id. 585; *Catlin* v. *Trinity College*, 113 id. 133; *In re Herr*, 22 N. Y. S. R. 905–907; *In re ‚Keech*, 26 id. 433; 32 id. 227; *In re Lenox*, 9 N. Y. Supp. 895; *In re Vanderbilt*, 10 id. 239; *C. O. Asylum* v. *Mayor, etc.*, 104 N. Y. 581; *Orphan Asylum* v. *W. County*, 31 Hun, 116; *S. B. Society* v. *Comrs.*, 36 id. 311; *In re Curtis*, 25 N. Y. S. R. 1028; *In re McGraw*, 111 N. Y. 66, 85, 86; *Chamberlain* v. *Chamberlain*, 43 id. 424.) Chapter 553 of the Laws of 1890 does not relieve the appellants. (*In re Miller*, 110 N. Y. 216; *Sherrill* v. *Christ Church*, 31 N. Y. S. R. 896.)

HAIGHT, J. On the 27th day of October, 1888, John Guy Vassar died at the city of Poughkeepsie, leaving a last will and testament which was duly admitted to probate by the surrogate of Dutchess county on the 11th day of February, 1889, by which will legacies were bequeathed to the Vassar Brothers Home for Aged Men, Vassar Brothers Hospital, Vassar

College, and the John Guy Vasser Orphan Asylum. On the 20th day of February, 1890, upon a petition of the executors appointed under the provisions of the will, the surrogate made an order appointing Daniel W. Gurnsey an appraiser to appraise the fair market value, at the time of the death of the decedent, of the bequests to the institutions named, and ordered and directed the appraiser to inquire into and report as to the liability to or exemptions from the Collateral Inheritance Tax under the provisions of chapter 713 of the Laws of 1887 of each of said institutions. Thereupon, and on the 3d day of March, 1890, the appraiser, after giving the notices required by the statute, entered upon a hearing of the parties interested, and, after taking the evidence submitted by the respective parties, made his report to the surrogate, bearing date March 24, 1890, in which he appraised the cash market value of the bequests made to the institutions named by the deceased under the provisions of his will, as follows: Vassar Brothers Home for Aged Men, $50,560.59; John Guy Vasser Orphan Asylum, $609,506.05; Vassar Brothers Hospital, $660,871.05; Vassar College, $558,516.05.

The appraiser further reported that, in his opinion, none of the bequests to the institutions named were subject to the Collateral Inheritance Tax.

Upon a hearing before the surrogate this report was set aside and the proceedings were referred back to the appraiser, with directions for him to report as to the fair market value, at the time of the death of the decedent, of the aforesaid bequests, and thereupon the appraiser made his second report to the surrogate, giving the values the same as they were given in his first report, and thereupon, and on the 13th day of May, 1890, the surrogate made an order assessing a tax of five per cent upon each of the bequests to the institutions named except that of the John Guy Vassar Orphan Asylum, which he held to be exempt. He also, in and by the terms of his order, adjudged that all increase of the residuary legacies, and each of them, except the one to the John Guy Vassar Orphan Asylum, accrued, or thereafter to accrue, since the death of

the testator, was liable to the payment of the tax, and directed that the amount should be ascertained and determined upon the final accounting of the executors. This order, having been affirmed in the General Term, was brought to this court for review upon appeals taken on behalf of the Vassar Brothers Home for Aged Men, Vassar Brothers Hospital and Vassar College.

It appears that the personal estate of the deceased amounted to upwards of two million dollars, and that at the time of the hearing before the appraiser the same had been increased by the collection of interests upon investments made in the amount of about $150,000, so that the question as to whether the increase is subject to the tax is one of some importance.

The act to which we have referred provides: "Section 1. After the passage of this act, all property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same  *  *  *  shall be subject to a tax of five dollars on every hundred dollars of the clear market value of such property." It will be observed that the property here referred to is that of which a person may die *seized or possessed*. By section 2 of the act it is provided that "When any grant, gift, legacy or succession upon which a tax is imposed by section first of this act shall be an estate, income or interest for a term of years, or for life, or determinable upon any future or contingent event, or shall be a remainder, reversion or other expectancy, real or personal, the entire property or fund by which such estate, income or interest is supported, or of which it is a part, shall be appraised immediately after the death of the decedent at what was the fair and clear market value thereof at the time of the death of the decedent, in the manner hereinafter provided, and the surrogate shall thereupon assess and determine the value of the estate, income or interest subject to said tax in the manner provided in section 13 of this act, and the tax prescribed by this act shall be immediately due and payable to the treasurer of the proper county," etc. And again, section 4, "All taxes imposed by this act, unless otherwise herein provided for,

shall be due and payable at the death of the decedent, and if the same are paid within eighteen months, no interest shall be charged and collected thereon, but if not so paid, interest at the rate of ten per cent per annum shall be charged and collected from the time said tax accrued; provided that if said tax is paid within six months from the accruing thereof, a discount of five per cent shall be allowed and deducted from said tax."

We shall not stop to consider whether the bequests in question are those mentioned within the provisions of section 2 of the act referred to, for the reason that if they are not covered by the provisions of that section, they certainly are by that of section 4; but the provisions of the former section indicate the legislative intent as bearing upon the question under consideration, for it requires the appraisal to be made immediately after the death of the decedent at the fair market value of the property at the time of the death, and makes the tax immediately due and payable, and to the same effect are the provisions of section 4, for therein the taxes imposed are made due and payable at the death. If they are not paid within eighteen months, interest thereon at the rate of ten per cent may be charged and collected, but if they are paid promptly, or before the expiration of six months, a discount of five per cent is allowed. It appears to us that these provisions are inconsistent with the claim that the tax is not to be assessed until the final accounting of the executors, and then is to be assessed upon the interest that has been collected upon the funds in their hands. This would not only deprive the legatees of the right to avail themselves of the discount of five per cent, but would subject them to the liability of being taxed upon interests thereafter accruing. The better and more reasonable construction of the statute is that the property of which the person died seized or possessed is subject to the tax; that the increase or interest thereafter obtained by the executors is property of which the testator was not seized or possessed at the time of his death; that the property should be appraised and the tax assessed as soon after death as practi-

cable, and that the tax should then become immediately due and payable; that the provision for charging interest thereon, in case it is not paid, is in lieu of any increase or interest that may be derived from the estate by the executors.

It appears that Matthew Vassar, Jr., died in the year 1881, possessed of a large real and personal estate; that he left a will in which he disposed of a portion of his estate, and then provided that the residue should be devoted to the founding of a hospital in the city of Poughkeepsie. Thereupon the legislature, by chapter 298 of the Laws of 1882, passed an act to incorporate the Vassar Brothers Hospital in the city of Poughkeepsie.

It provides: "Section 3. So much of the real estate of this corporation as is occupied for the purposes of a hospital, and all its personal property, shall be exempt from taxation.

"Section 5. The said corporation shall be and is hereby empowered:

"1. To demand and receive from the trustees under the said will of Matthew Vassar, Jr., deceased, as proved on the twenty-fourth day of August, eighteen hundred and eighty-one, and recorded in the office of the surrogate of the county of Dutchess, on the twenty-fourth day of August, eighteen hundred and eighty-one, the real estate heretofore purchased by them, and whereon they design erecting said hospital.     *     *     *

"2. To purchase and hold any other real estate in the said city of Poughkeepsie, and to erect and maintain thereon, or on lands already acquired, suitable buildings for the use of the said hospital.

"4. The said corporation may take and hold any additional donations, grants, devises or bequests which may be made in further support of, or in addition to, said hospital."

It does not appear that it has other real estate than that on which the hospital building is located. The bequest to the Vassar Brothers Hospital under consideration is entirely of personal property. Under the provisions of the Collateral Inheritance Act, the societies, corporations and institutions exempted by law from taxation are excepted from the provis-

ions of the act. It consequently appears to us that the Vassar Brothers Hospital, under the express provision of its charter, is exempted from taxation on all of its personal property, and, therefore, is one of the corporations excepted from the provisions of the Collateral Inheritance Act.

The court below appears to have been of the opinion that the provision of the act excepting " the societies, corporations and institutions now exempted by law from taxation " referred only to those bodies which enjoy complete immunity from taxation as to all property which they now have or which they may at any time become possessed, even in excess of the statutory limit. Such a construction of the statute would practically nullify the provision and render exemption from taxation contained therein of no avail. It would subject every or nearly every charitable institution in the land to the payment of the tax. It has always been the policy of the government to limit the power of charitable corporations to take and hold property. Under the general act such corporations were permitted to take and hold real estate for the purposes of their incorporation, and for no other purpose, to an amount not exceeding the sum of fifty thousand dollars in value, and personal estate for like purpose and amount, but the clear annual income of such real and personal property shall not exceed the sum of ten thousand dollars. (Laws of 1848, chapter 319.)

Various amendments have from time to time increased these amounts. The last in 1890, which permits them to take not exceeding three million dollars, or the yearly income derived from which shall not exceed the sum of two hundred and fifty thousand dollars. (Laws of 1872, chapter 649; Laws of 1889, chapter 191; Laws of 1890, chapter 553.)

The policy has been generally adhered to in the special acts incorporating societies of this character, and in nearly every instance limitations and restrictions are incorporated in the provisions of the act. The act of 1890, to which we have referred, embraces all such charitable corporations, whether organized under general laws or special acts. They may now

lawfully take three million dollars, a sum largely in excess of that which was before permitted and which under former acts would not have been exempt. These corporations, if exempt either under general laws or special acts, are generally exempt to the extent that they are empowered to take and hold, and if they are liable to taxation it must be for other and additional property of which they may have become possessed. Such is the case with the Vassar Brothers hospital. As we have seen, all its personal property is exempt; so also is its real estate, which is occupied for the purpose of a hospital. It is not empowered to take or acquire real estate for any other purpose. It may take the land already purchased by the trustees of Matthew Vassar, Jr., on which they were to erect the hospital. It may purchase other real estate in the city of Poughkeepsie for the purpose of erecting thereon suitable buildings for the use of the hospital. It may take by donation or grant other real estate " in further support of or in addition to said hospital." The concluding clause evidently was intended to limit the purpose for which grants of real estate may be received ; that is, to make additions to the hospital. The proper care of the sick often requires buildings separate and apart, so that those afflicted with infectious and contageous diseases may be isolated. A properly equipped hospital should have such buildings, and if they are erected on lands even remote and not connected with that on which the main building is constructed they are none the less " for the purposes of a hospital."

Again, under the act of 1890, the personal property of such corporation is exempt. The real estate is not, unless it is exempt under existing laws. It provides that the provisions of the Collateral Inheritance Act should not apply thereto, nor to any gifts to any such corporations, by grant, bequest or otherwise. It is true that the assessment in question was made before the passage of this act, and there is nothing in its provision indicating a legislative intent that it should be retroactive in its effect ; but it shows the trend of legislation and is to some extent a legislative construction of the act under consideration. We have shown that the hospital is exempt to the

extent of its capacity to take and hold property. We cannot assume that it will exceed its corporate powers or do that which would be *ultra vires*.

The Revised Statutes provide that " the following property shall be exempt from taxation, * * * every poor-house, alms-house, house of industry and every house belonging to a company incorporated for the reformation of offenders or to improve the moral condition of seamen, and the real and personal property used for such purposes belonging to or connected with the same." (1 R. S. 388, § 4.)

It will be observed that only the personal property which is used for the purpose belonging to or connected with the institutions named are exempt, so that as to other personal property it would still be liable to taxation, and, therefore, complete immunity from taxation is not provided for. And yet it will hardly be claimed that it was intended that the state should impose and collect a collateral inheritance tax upon a bequest of bedding to an alms-house for the use of the inmates. (See *In the Matter of the Legacy under Frederick Herr's Will*, 27 N. Y. St. Rep. 591 ; reversing the order of the surrogate, 22 id. 905 ; *In the Matter of the Estate of Curtis, Deceased*, 25 id. 1028 ; *In the Matter of the Estate of Forrester, Deceased*, 35 id. 776 ; *Association for the Benefit of Colored Orphans* v. *Mayor, etc.*, 104 N. Y. 581.)

The taxes imposed by the Collateral Inheritance Act are special and not general. (*In the Matter of McPherson*, 104 N. Y. 306–317.)

And the rule is that special tax laws are to be construed strictly against the government and favorable to the taxpayer, that a citizen can not be subjected to special burdens without clear warrant of law. (DosPassos on Collateral Inheritance Taxes, 41 ; *Matter of Enston*, 113 N. Y. 174, 177.)

Applying this rule to the act in question it appears to us that there can be little if any doubt as to the way it should be construed upon the question under consideration.

The case of *Catlin* v. *Trustees of Trinity College* (113 N. Y. 133), we understand to be in harmony with the views herein

expressed.   In that case a legacy of fifty thousand dollars had
been left to Trinity College, a Connecticut corporation.   The
chief question discussed was as to whether the personal estate
of the college was exempt under the Revised Statutes exempt-
ing property from taxation.   (1 R. S. [6th ed.] 932, § 4.)

Subdivision 3 exempts " every building erected for the use of
a college, incorporated academy or other seminary of learning;
every building for public worship; every school-house, court-
house and jail, and the several lots whereon such buildings are
situated, and the furniture belonging to each of them."   It
was clear from the provisions of this section that the personal
property other than the furniture was not exempt.   It was
claimed however that the personal property was made exempt
under subdivision 7 which provides for the exemption of the
" personal estate of every incorporated company not made liable
to taxation on its capital stock in the fourth title of this chapter."
It was however held that incorporated companies therein
referred to were intended to designate business and stock cor-
porations which under the provisions of the chapter were
exempted from taxation on their capital and that it did not
embrace incorporated colleges or churches.

The Vassar Brothers Home for Aged Men in the city of
Poughkeepsie was incorporated under the general act for char-
itable purposes, and its certificate of incorporation provides that
its particular business and object is " the support of respectable
aged indigent Protestant men who are unable to support them-
selves and who have been actual residents of the city of Pough-
keepsie for five years next preceding the application for such
support."   The by-laws of the board of trustees, among other
things, provided: " That the proposed beneficiary shall be at
least of the age of sixty-five years unless in a special case by a
three-fourths vote of the trustees the age shall be fixed at sixty
years, and he or some one in his behalf in case the application
is favorably acted upon shall pay to the treasurer to belong abso-
lutely to the home the sum of two hundred and fifty dollars
should the accepted applicant be between the ages of sixty-five
and seventy years; the sum of two hundred dollars should he

be between the ages of seventy and seventy-five; the sum of one hundred and fifty should he be between the ages of seventy-five and eighty years; the sum of one hundred dollars should he be of the age of eighty years or upwards, and if an applicant has any property he shall be required to transfer the same by suitable methods to the home."

Corporations are given the power to make by-laws not inconsistent with any existing law for the management of their property, the regulation of their affairs, etc. (2 R. S. [7th ed.] 1531, § 6.)

The home is not exempt under the provisions of any special act. If exempt, it is because of its being an alms-house within the provisions of the Revised Statutes to which we have already referred. It would be an alms-house were it not for the fact that under its by-laws an entrance fee is charged to those seeking its benefits. (*Association for the Benefit of Colored Orphans* v. *Mayor, etc.*, 104 N. Y. 581.)

It is claimed that the by-laws referred to are unauthorized and inconsistent with the provisions of the charter; that the business and object was the support of respectable, aged, indigent Protestant men who were unable to support themselves. However this may be, we are of the opinion that the charges authorized by the by-laws do not operate to deprive the home of the exemption to which it otherwise would be entitled. The home was founded, incorporated, endowed and so far has been substantially maintained by charity. Its object, as we have seen, is the support of the aged and indigent who are unable to support themselves. It possesses no element of private or corporate gain and whatever income it may derive is devoted to the charity for which it was incorporated.

In the case of *Philadelphia* v. *Women's Christian Association* (125 Pa. St. 572), the defendant maintained a house for the lodging of women who were dependent upon their own exertions for support and who did not receive more than six dollars per week as wages. The association charged them from three to three and one-half dollars per week for their board and lodging. It was held to be exempt from taxation. That it was

essentially a public charity, free from the element of gain, and that its character as a charitable institution was not destroyed by reason of the revenue it received from the recipients of its bounty.

In *County of Northampton* v. *Lafayette College* (128 Pa. St. 132), a tuition fee of forty-five dollars per annum was charged in the classical and general scientific course and seventy-five dollars in the technical course to students who were able to pay the same. The college buildings were erected and the college substantially maintained by voluntary gifts and donations. It was held to be a purely charitable institution and exempt from taxation notwithstanding that a portion of its annual expenses was paid by tuition fees received from its students.

In *Gooch* v. *Association for Relief of Aged Indigent Females* (109 Mass. 558), it was held that a corporation established for the support of poor and old women which devotes all of its funds to the support of such women in its home and is no source of profit to its members, is a charitable corporation although it requires a payment of money as a requisite for admitting the women into its home and a transfer to it of all of the property that the beneficiary may have.

And in *McDonald* v. *Massachusetts General Hospital* (120 Mass. 432), it was held that a corporation the object of which is to provide a general hospital for sick and insane persons, having no capital stock nor provisions for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust for the object of sustaining the hospital, conducting its affairs for the purpose of administering to the comfort of the sick without expectation or right on the part of those immediately interested in the corporation to receive compensation for their own benefit, is a public charitable institution, and the fact that its rules require of its patients payment for their board according to their circumstances and the accommodation they receive, do not render it the less a public charity.

The case of *Temple Grove Seminary* v. *Cramer, Receiver of*

*Taxes, etc.* (98 N. Y. 121), originated under the subdivision of the statute already referred to in reference to the exemption of colleges, incorporated academies or seminaries of learning. During the summer months the school buildings were leased as a summer hotel or boarding house, and yet it was held that the seminary did not wave or forfeit its right to exemption.

We are aware that a different conclusion has been reached by the surrogate in New York, and by the General Term of the first department.   (*Matter of Keech*, 26 N. Y. St. Rep. 433 ; affirmed, 32 id. 227 ; *In re Lenox Estate*, 9 N. Y. Supp. 895 ; *In re Vanderbilt Estate*, 10 id. 239–242.)

But this result would hardly be in keeping with the general policy of the state government, which has been to foster and encourage charitable institutions of the character of the one under consideration ; and where it operates to relieve the public from the support of the poor and indigent, thus relieving the public of the burden it otherwise would have to assume, to regard it as an alms-house and as such exempt from taxation.

Vassar College was incorporated by chapter 2 of the Laws of 1861, under the name of Vassar Female College.   Its object as stated in the act was to promote the education of young women in literature, science and the arts.   It was given power " to purchase, take and hold by gift, grant or devise   *   *   * any real and personal property the yearly income or revenue of which shall not exceed the value of forty thousand dollars."

By chapter 39 of the Laws of 1862, it was provided that " the real and personal property of Vassar Female College to the extent it is by its act of incorporation authorized to hold the same is hereby exempted from taxation."   We have already discussed the question of complete immunity from taxation, and from the conclusion reached it follows that the college would be exempt unless the yearly income from its real and personal property shall exceed in value the sum of forty thousand dollars.   We gather from the evidence that but little if any income is derived from the real estate of the college.   It

is possessed of a farm which is largely used for walks and pleasure grounds by the students. It produces some income, but the expense of maintaining it is said to about equal the income. The personal estate invested produces an income annually of about twenty-five thousand dollars. We are not informed as to the amount that would be required to bring the income up to the statutory limit. The surrogate has not favored us with any findings upon the question, and we are left without evidence upon which we can determine the fact. The courts below appear to have been of the opinion that the determination of this fact was not essential or material, and to this extent we are inclined to adopt their views. Under the act of incorporation, the college has capacity to take and hold property only to the extent of the limit prescribed by the statute ; beyond that, its capacity or power ceases. Its property is exempt from taxation to the extent of its power to take and hold. It follows that if it has power to take the whole or any part of the bequest in question the same would be exempt. The question as to whether it can take the whole of the bequest is not now before us. It was said upon the argument to be pending in the Court of Appeals, but whether it is or not we think we may safely trust the heirs at law to look after their interest and the attorney-general to see that the college does not exceed its corporate powers.

The orders should be reversed and the proceedings dismissed, with costs.

All concur.

Orders reversed.