IN RE LOUIS C. CLARK'S ESTATE.

January Term, 1927.

Present:  WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed February 25, 1927.

*Taxation—Inheritance Tax—G. L. 1108—When Legatee or Distributee Is "Entitled" to Legacy or Share—When Legatee or Distributee May "Come into Possession" of Legacy or Share—Origin of Rights and Title of Distributees—Manner in which Executor or Administrator Holds Title—"Entitled" as Used in G. L. 1108—Statutes Relating to Payment of Inheritance Tax before Distribution for Protection of Executor or Administrator—Computation of Inheritance Tax on Partial Distribution—Interpretation of Statutes—Significance of Words "or Arising from" in G. L. 1090—Pecuniary Legacy as Part of Decedent's Estate—Inheritance Tax as Tax upon Right of Succession—Right to Make Testamentary Disposition or To Inherit Not Inherent Right—Inheritance Tax Not Applicable to Property Whose Situs Is in Another State—Effect of Failure of Another State To Tax Property of Resident Decedent Situated Therein—Effect on Taxing Power of State by Court's Assumption of Jurisdiction over Property Situated Outside State.*

1.  Legatee or distributee is "entitled," within meaning of word as used in G. L. 1108, providing how value of legacy or distributive share for purpose of inheritance tax is determined, to possession or beneficial use of such legacy or share after decree of distribution is made, and not before.

2.  Legatee or distributee may "come into possession" or use of such legacy or share, within meaning of G. L. 1108, through voluntary act of executor or administrator, without such decree.

3.  Rights and title of distributees of an estate in property acquired by them do not originate in decree of distribution, but are derived from decedent, either by will or under statute of distribution.

4. Executor or administrator holds title to personal property, not in his own right, but as trustee for particular purpose, and when that purpose is declared to have been accomplished by a decree of probate court, his title automatically ends, or it may terminate sooner if he voluntarily pays or delivers to right parties their proper legacy or distributive share in estate.

5. Word "entitled," twice used in last clause of G. L. 1108, is used in two different senses: First, to indicate person who is to receive property ultimately and, second, to designate person who, after decree of distribution, can maintain action for property or its equivalent.

6. Although G. L. 1106, 1095, 1097, and 1130, in effect provide that value of all legacies and distributive shares subject to inheritance, and amount of tax, shall be determined and tax accounted for to executor or administrator, and paid to State treasurer before or at time such legacies are paid or delivered, since by G. L. 1098 executor or administrator is made liable for such tax, such provisions, except G. L. 1130, are primarily for protection of such executor or administrator, who may avail himself thereof or not as he may desire.

7. Where executors voluntarily, and without decree of probate court, 42 days after testator's death distributed certain securities to proper legatees named in will, but retained ample funds and assets to pay all specific legacies, debts, and all other charges and expenses, inheritance tax provided by G. L. 1090, 1091, *held* properly computed on value of such securities as of date of such partial distribution, in view of provisions of G. L. 1108.

8. In interpretation of statutes, words therein are presumed to have been used for a purpose, and such sense is to be made from whole statute that no clause, sentence, or word shall prove superfluous, void, or insignificant, if by any other construction they may all be made useful and pertinent.

9. Words "or arising from" as used in G. L. 1090, providing for inheritance tax on all legacies or distributive shares, to individuals in classes therein specified, "consisting of or arising from" real or personal estate belonging to decedent at date of his death as therein set forth, *held* intended to cover income derived from legacies and distributive shares that are subject to the tax, while such legacies and shares remain in hands of executor or administrator, not to exceed one year from death of decedent.

10. A pecuniary legacy consists of decedent's estate as much as does a legacy of specific property, since one meaning of word "consist" is "to be composed or made up of," and legacy that points out particular property legatee is to receive is in no sense "composed or made up of" decedent's property any more than is legacy that may have to be satisfied from proceeds of property of decedent.

11. Inheritance tax, provided by G. L. 1090, 1091, is a tax upon right of succession merely, and such right is subject entirely to legislative will.

12. Neither right to make testamentary disposition, nor right to inherit property, is an inherent right, but each depends entirely upon consent of Legislature, which can withhold or grant right, and, if granted, can make its exercise and extent subject to such burdens and requirements as it sees fit.

13. Certain tangible personal property, consisting of household furniture, household effects, and paintings, kept and used by resident testator in his office and home in another state, and certain jewelry kept by him in safety deposit box in such state, *held* not subject to inheritance tax, situs of property being in such other state.

14. That state in which foregoing property was located failed to assert its rights to tax such property, cannot enlarge rights of this State to tax it.

15. Courts cannot, by merely assuming jurisdiction over property of resident testator situated in another state, bring it within taxing power of State.

APPEAL by State to Supreme Court, Chittenden County, from decree of probate court for the district of Chittenden, fixing amount of inheritance taxes payable on distribution of estate. The opinion states the case.  *Affirmed.*

*Erwin M. Harvey,* commissioner of taxes, for the State.
Buckner
*Henry B. Shaw* and *Root, Clark, Howland & Bollantine* (of New York City) for the executors.

SLACK, J.  This is an appeal from a decree of the probate court within and for the probate district of Chittenden, and involves the construction of certain provisions of our inheritance tax law.

It appears from the findings of the probate court, which are unchallenged, that Louis C. Clark, who was a resident of the city of Burlington, this State, died August 16, 1924; that by his will, which was duly probated, he left the bulk of his estate to residuary legatees; that on September 27, 1924, the executors voluntarily, and without a decree of the probate court, distributed to such legatees, in kind, certain securities, having a value at that date (including accrued interest in the case of bonds) of $1,925,160.64; that such distribution was made to the proper persons, and that ample funds and assets were retained by the executors to pay all specific legacies, debts, expenses of administration, commissions and taxes; that the value of such securities (including accrued interest in the case of bonds) on August 16, 1925, one year after testator's death, was $2,086,333.63.

The first question for review is whether, in the circumstances, the inheritance tax for which such legatees and distributees were liable under our law should be computed on the value of such securities on the date of such partial distribution or at the expiration of one year from the death of testator. This depends upon the construction to be given the provisions of G. L. 1108, which reads as follows:

"The value of a legacy or distributive share mentioned in section one thousand and ninety or one thousand and ninety-one, except as otherwise provided in this chapter, shall be its actual market value at the expiration of one year from the death of the decedent; but if such legacy or share is sooner paid or delivered, the valuation thereof shall be determined as of the date at which the person entitled to the same comes into or is entitled to the possession or the beneficial use thereof."

It is evident that the Legislature intended that the tax imposed by G. L. 1090 and 1091 should be computed on the value of the legacy or distributive share at the time the same was turned over to the legatee or distributee, or he became legally entitled to the possession or the beneficial use thereof, which, speaking generally, is one year from the death of decedent (G. L. 3385), hence the general provision for the valuation of such property at that time. But the Legislature recognized the fact that a legacy or distributive share might be paid or delivered to the person entitled thereto within one year from the death of decedent, and to provide for such cases added the last clause of said section. It is the value of the property at the time it is

actually delivered in the one instance, or when delivered in contemplation of law in the other, that forms the basis for the tax under the provisions of G. L. 1108.

The precise question is whether a voluntary payment or delivery of a legacy or distributive share made in the circumstances shown in the instant case falls within the provisions of the last clause of G. L. 1108, or whether such provisions apply only to a payment or delivery of such legacy or share in instances where the estate is settled within one year and after the determination of the distributive shares and a decree of distribution. The language of the clause is broad enough to include the former, and when considered as a whole convinces us that it was intended to do so.

[1-4]  The valuation is to be made as of the date when a legatee or distributee comes into the possession, etc., of a legacy or distributive share, *or* when he is *entitled* to the possession, etc., of such legacy or share. He is *entitled*, within the meaning of the word as here used, to the possession or the beneficial use of such legacy or share after a decree of distribution is made, and not before (*Baldwin* v. *Percival et al.*, 88 Vt. 211, 92 Atl. 101; *Davis' Admr.* v. *Flint's Estate*, 67 Vt. 485, 32 Atl. 473); he may *come into* such possession or use, through the voluntary act of the executor or administrator, without such decree. Such, in effect, is the holding of this Court in *In re Scott's Account*, 36 Vt. 297; *Babbitt* v. *Bowen*, 32 Vt. 437; *Taylor* v. *Phillips*, 30 Vt. 238. See, also, *Brown* v. *Forsche*, 43 Mich. 492, 5 N. W. 1011, and *Palmer* v. *Palmer's Estate*, 106 Me. 25, 75 Atl. 130, 19 Ann. Cas. 1184. Mr. Woerner in his American Law of Administration (3rd. ed.) vol. III, § 519, states the law concerning voluntary payments by executors and administrators thus: "The executor or administrator may vest in the distributees both title and possession of their respective shares before an order of distribution is made, or without any such order. If he pays the right parties their proper shares, he is protected, whether it is done under the sanction of the court or not, or before or after the passing of an account." This is so because the rights and title of such distributees in the property acquired by them do not originate in the decree of distribution, but are derived from the decedent either by will or under the statute of distribution. See Alexander on Wills (3rd. ed.) vol. III, § 1579; *Coolidge* v. *Taylor*, 85 Vt. 39, 80 Atl. 1038. While under our law an execu-

tor or administrator holds the title to personal property, he holds it not in his own right, but as trustee for a particular purpose (*Pond* v. *Pond's Estate*, 79 Vt. 352, 65 Atl. 97, 8 L. R. A. [N. S.] 212), and when that purpose is declared to have been accomplished by a decree of the probate court, his title, such as it is, automatically ends; or it may terminate sooner if he voluntarily pays or delivers to the right parties such parties' proper legacy or distributive share in the estate.

[5]   The state contends that the word "entitled," which appears twice in this clause, is used in the same sense in each instance, namely, to designate the person who, after a decree of distribution, can maintain an action for the property, or its equivalent.   We think otherwise.   While such is undoubtedly its meaning as last used, as first used it manifestly means the person who is to receive the property ultimately, either by will or under the statute of distribution.   It is used in the latter sense in *In re Scott's Account, supra.*

[6]   Although the statute evidently contemplates that the value of all legacies and distributive shares subject to the tax, as well as the amount of the tax, shall be determined, and the tax be accounted for to the executor or administrator, and paid to the State treasurer, before or at the time, such legacies or shares are paid or delivered (G. L. 1106, 1095, 1097, and 1130), since the executor or administrator is made liable for such tax (G. L. 1098), these provisions of the statute, except G. L. 1130, appear to be primarily for the protection of such executor or administrator.   Whether he avails himself of such protection concerns him, alone.   In the instant case, the protection afforded by the statute was unnecessary since the executors retained sufficient funds to meet any possible exigency.   G. L. 1130 does not provide who shall pay the tax as there required, but presumably it is the executor or administrator, if the estate is settled in court, since the law not only imposes upon him the duty of collecting the same from the legatees and distributees, but makes him liable therefor as well.   It is not apparent how his failure to comply with the statute, especially when he has collected such tax, or has in effect done so, as in the instant case, can effect a voluntary payment or delivery by him of a legacy or distributive share.   It may be that such legacy or share would still be liable for the tax, if unpaid, under the lien created by G. L. 1097, but as that question is not involved we express no view concerning it.

[7]   We think it clear that one purpose of the clause in question was to provide for just such instances as the one here presented, and we find nothing in the law itself, its legislative history, or the cases to which attention has been called by the State, to justify a different conclusion.   We hold, therefore, that the tax was properly computed on the value of the securities as of the date of such partial distribution.

It logically follows that such income as the executors might have derived from such securities during the year following the death of the testator, had the same not been distributed, was properly excluded by the probate court in determining the legacies and distributive shares subject to tax.

The same is true respecting interest that the executors would have received on money which the findings show was paid to the legatees and distributees at different times within the year following the death of the testator, had the same not been so paid.

The next question is whether net income that accrues within one year after the death of a decedent, on legacies and distributive shares that remain in the hands of the executor or administrator, is taxable as part of such legacies or shares under the provisions of G. L. 1090, the material part of which reads as follows:

"Every person other than the father * * * * that shall receive in trust or otherwise a legacy or distributive share consisting of or arising from real estate within this state or any interest therein owned by such decedent at the date of his death, and passing by will, the law of descent, or a decree of court in this state, or that shall receive in trust or otherwise a legacy or distributive share consisting of or arising from personal estate or any interest therein so passing from such decedent who at the date of his death was an inhabitant of this state and then owned such personal property, shall * * * * * pay to the state," etc.

Manifestly, this question would have to be answered in the negative were it not for the words "or arising from" that appear in this statute, since nothing else in the language there used indicates the contrary.   Except for these words, the cases relied upon by the executors, among which are *Hooper* v. *Bradford,* 178 Mass. 95, 59 N. E. 678; *In re Williamson's Estate,* 153 Pa. 508, 26 Atl. 46; and *In re Vassar's Will,* 127 N. Y. 1, 27 N. E. 394, would be full authority for their contention that such income is not to be computed as part of the legacy or share subject to the tax.

[8-10]   But these words are as much a part of the legislative pronouncement on this subject as is the rest of the language of this statute. ⸱They cannot be ignored, "For it is an anciently established rule in the interpretation of statutes, that such a sense is to be made upon the whole statute, that no clause, sentence or word shall prove superfluous, void or insignificant, if, by any other construction they may all be made useful and pertinent." See *Commonwealth* v. *McCaughey,* 9 Gray (Mass.), 296. These words must be presumed to have been used for a purpose. What was the purpose? Were they intended to cover income derived from legacies and distributive shares that are subject to the tax, while such legacies and shares remain in the hands of the executor or administrator, not to exceed one year from the death of decedent, or were they intended to cover such pecuniary legacies and shares as are necessarily paid from the proceeds of property owned by decedent at the date of his death? They must have been intended for one or the other of these purposes, since there is none other to which they can apply. The State contends that they were intended for the former, while the executors contend that they were intended for the latter. To our minds to treat them as used for the latter purpose is to render them meaningless and superfluous, since the language of the statute, without them, is broad enough to include such legacies and shares. The statute includes all legacies and distributive shares consisting of real or personal estate owned by the decedent at the date of his death. A pecuniary legacy consists of decedent's estate as much as does a legacy of specific property. One meaning of the word "consist" according to Webster's New International Dictionary is "to be composed or made up of." A legacy that points out the particular property that the legatee is to receive is in no sense "composed or made up of" decedent's property any more than is a legacy that may have to be satisfied from the proceeds of the property of decedent. We think that these words were intended to have the meaning claimed by the State.

[11, 12]   It is true, as urged by the executors, that the title of the legatees and distributees to their respective properties vested in them immediately upon the death of the testator, that is, vested in point of right, subject to the rights of the executors for certain purposes; and that subject to such rights of the executors, the legatees and distributees owned the property when

the income which the State seeks to tax accrued thereon. But this is not determinative of the question before us. The testator, at the date of his death, owned the property from which this income was derived, and it is income derived from property so owned, while in the hands of the executor or administrator, that is subject to the tax under this statute, irrespective of the subsequent ownership thereof. The tax claimed by the State is a tax upon the right of succession merely (*In re Fulham's Estate,* 96 Vt. 308, 119 Atl. 433; *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 724, 6 Ann. Cas. 578), and such right is subject entirely to the legislative will. Neither the right to make a testamentary disposition nor the right to inherit property is an inherent right. It is not guaranteed by the fundamental law. It depends entirely upon the consent of the Legislature. It can withhold or grant the right, and if it grants it it can make its exercise and its extent subject to such burdens and requirements as it sees fit. *In re Martin's Estate,* 96 Vt. 455, 120 Atl. 862; *Matter of Penfold,* 216 N. Y. 163, 110 N. E. 497, Ann. Cas. 1916A, 873; *Matter of White,* 208 N. Y. 64, 101 N. E. 793, 46 L. R. A. (N. S.) 714, Ann. Cas. 1914D, 75. Other cases illustrative of the legislative authority respecting the right of succession to property are, *Cahen* v. *Brewster,* 203 U. S. 543, 51 Law. ed. 310, 27 Sup. Ct. 174, 8 Ann. Cas. 215; *Ferry* v. *Campbell,* 110 Iowa, 290, 81 N. W. 604, 50 L. R. A. 92; *Safe Deposit Co.* v. *State,* 143 Md. 644, 123 Atl. 50, 32 A. L. R. 847; *Gelsthorpe* v. *Furnell,* 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170. That the Legislature had full authority to include this income with the legacies and shares for the purpose of the tax cannot be doubted, indeed, it is not claimed otherwise, and we entertain no doubt that such was its intention, and that such is the effect of this statute.

This conclusion is fully sustained, whether we adopt the rule of construction laid down in the Fulham Estate Case or the stricter rule recognized by Mr. Cooley in his work on Taxation, vol. IV, § 1733; *Eidman* v. *Martinez,* 184 U. S. 583, 46 L. ed. 697, 22 Sup. Ct. 515, and other cases.

[13-15] It appears that this estate included certain tangible personalty, consisting of household furniture, household effects, and paintings, valued at $7,530, which testator kept and used in his office and, we assume, his home in New York City; and a diamond and emerald brooch, valued at $4,500, that formerly belonged to a deceased daughter, which he had kept in

a safety deposit box in New York, for safe-keeping, for upwards of five years subsequent to his daughter's death and until his death. The probate court held that the situs of this property was in New York, and that it was not subject to our inheritance tax. Such holding appears to be fully sustained by *Frick* v. *Pennsylvania,* 268 U. S. 473, 69 L. ed. 1058, 45 Sup. Ct. 603, 42 A. L. R. 316. The State contends, however, that that case is not determinative of the question here presented, since it there appeared that ancillary proceedings had been had in the states where the property there in question was situated, which has not been done in the instant case. But this distinction is of no consequence in view of the holding in the Frick Case. In speaking of the authority of the state to impose a property tax or a transfer tax the Court there said: "But to impose either tax the state must have jurisdiction over the thing taxed, and to impose either without such jurisdiction is mere extortion and in contravention of due process of law." The property here in question was actually in the state of New York at the time of the testator's death; and so far as appears, none of it was ever within the jurisdiction of this State, either before or since his death. This being so, the mere failure of New York to assert its rights respecting it cannot enlarge the rights of this State; nor can the courts of this State, by merely assuming jurisdiction over it, bring it within the taxing power of this State.

As to the brooch, the State further insists that since it was not used in New York, and had no connection with testator's business there, but was there for safe-keeping only, and could have been kept as well in Burlington, it is subject to the tax in this State. Whether tangible personalty kept by a decedent at the time of his death in a state other than that of which he was then an inhabitant might be subject to such tax in the latter state, in some circumstances, we express no opinion. It is enough to say that the circumstances in the instant case clearly justify the conclusion reached by the probate court. To hold otherwise would be to disregard the well-recognized distinction respecting the situs of tangible and intangible personalty for the purpose of taxation. See *Frick* v. *Pennsylvania, supra; Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 50 L. ed. 150, 26 Sup. Ct. 36, 4 Ann. Cas. 493.

This disposes of all questions presented for review.

*Decree of the probate court affirmed. Let the result be certified to the probate court.*