FRANKLIN,
January,
1836.

JOHN NASON and REUBEN EVARTS vs. BENJAMIN H. SMALLEY, CARTER H. HICKOCK and JOSEPH CLARK.

### (In Chancery.)

If a judgment be rendered in pursuance of an agreement of the parties which directs a particular mode of satisfying it, equity will not permit it to be enforced in any way inconsistent with the agreement.

If one of two executors fraudulently consent to a judgment against both, the other executors will be relieved in equity—and if the judgment operates as a fraud upon the estate it will be enjoined absolutely.

And this although the judgment creditor was not privy to the fraud, if he be a trustee merely for the party to the fraudulent agreement.

In this case the judgment creditor was an administrator, and the judgment was rendered by agreement between one of the defendants, and a person interested in the estate represented by the plaintiff. Held, that if the other persons interested in the estate sought to enforce the judgment, they were subject to all equities arising out of the agreement, And inasmuch as the court of law did not examine the merits of the claim, the court of equity will do so, and if they find it not equitable—they will not permit it to be inforced either against the defendant who did not in fact assent to it nor against the estate whch the defendants represent.

Under the Probate act of 1797, if lands are devised to A. and he is made executor jointly with B. and all debts due at the decease of the testator, together with all specific legacies are paid, A. holds the land as devisee and not as executor, and if a claim accrues afterwards the executor is not responsible.

The facts set forth in the bill were, substantially, these. In February 1810, Daniel Ryan died, possessed of a large real and

FRANKLIN,
*January*,
1836.

Nason et al.
*vs.*
Smalley et al.

personal estate, and leaving a widow, and two children, viz : William N. Ryan and Harriet Ryan. The said Daniel made his will, in which, after sundry specific legacies, he bequeathed the residue of his estate to the said William N. and Harriet in different proportions, and appointing the orator John Nason, together with David Edmond, and John Curtiss, both since deceased, his executors. The will was duly proved, and the said John Nason, Edmund and Curtiss took upon themselves the execution of the will, and on that occasion gave bond to the probate court in the usual form, executed by themselves and William Nason as surety. In November 1810, W. Nason died, having made his will, in and by which he bequeathed certain legacies to his wife, and children, making the orator John Nason his residuary legatee and devisee, and appointing the orators his executors. Said William Nason was seized at the time of his decease of certain real estate in St. Albans, which he bequeathed to his wife for life, with remainder to said John Nason, and was also possessed of certain lease hold premises, the use of which he bequeathed to A. and M. L. for life, with remainder to the said John. The orators took upon themselves the execution of the will, the said John Nason being the acting executor. That in 1829, the widow of said William Nason died.

In 1820 one Vincent, having a demand against John Nason, obtained a judgment and levied his execution of a part of the real estate of said William Nason, thus devised to said John, which was then subject to the life estate of the widow of said William, and having perfected his title thereto aliened the same.

In July 1820, the orator John Nason conveyed the residue of the home farm of the said William, subject to the life estate of the widow, to one Ainsworth, who subsequently mortgaged the same to one Miner, which mortgage came by assignment to the respondent Clark.

In March 1826 the said William N. Ryan, one of the residuary legatees of Daniel Ryan deceased, caused a suit to be instituted against the orators as executors of William Nason, in the name of the probate court, and counting upon the bond executed by said William Nason as surety for the said J. Nason, Curtiss, and Edmund, the executors of Daniel Ryan, and complaining of a devastavit by them of the estate of said Daniel Ryan. Pending this suit, William N. Ryan also deceased, leaving a minor son Daniel Ryan. The defendant Smalley was appointed administrator of William N. Ryan, and in that capacity appeared and was admitted to prosecute the suit. At the same time one Van Duzee, having

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

married the widow of William N. Ryan, was duly appointed guardian of his infant son Daniel. And in the mean time Harriet the other child and residuary devisee of said Daniel Ryan, assigned all her interest in his estate to the other defendant Hickock.

In this state of things, the suit being still pending, an agreement under seal was entered into between the orator John Nason, who was only surviving executor of Daniel Ryan, and principal in the bond in suit, and also one of the executors of William Nason deceased, in which capacity he was defendant in the suit, on the one part, and Van Duzee, who in his character of guardian represented one of the residuary devisees of Daniel Ryan, on the other part, by which it was agreed, in substance, that judgment should be entered in said suit for $5000 damages, and that the execution to be issued thereon should be levied of a certain portion of the home farm of the said William Nason, which was particularly described in the agreement, that the said John Nason should procure from the said Harriet Ryan a release of her interest in the tract so set off for the benefit of the representatives of said William N. Ryan, and that the residue of said execution should remain under the control of the said Nason, to be levied, if he so directed, of the residue of the said farm, in which case the same should be held in trust for such person or persons as the said Nason should appoint.

The bill states, that Everts, the other defendant in the suit at law, had no knowledge of this agreement until after the judgment was rendered. In pursuance of this agreement, a judgment was entered up against the orators, and in that suit, for $5000 damages and costs. But Van Duzee refused to carry the agreement into effect, and directed Smalley the other defendant to pursue the judgment to full satisfaction. Smalley took out execution on the judgment against the estate of William Nason deceased, which was returned *nulla bona*. He therefore brought a *scire facias* to have execution against the orators, *de bonis propriis*. This suit being brought to trial, judgment was rendered against the orators for $5100 damages and costs, to the decision of the court an exception was taken, and, in this state, the suit was pending when this bill was brought. The defendant Clark had in the meantime, brought ejectment on his mortgage, for the farm aforesaid, against the orator Nason, which was also pending when the bill was brought.

The bill also charges, that the orator Everts had no notice or knowledge of any liability of William Nason, on the bond aforesaid, or that any such claim existed against his estate, or that such

FRANKLIN,
January,
1836.
—————
Nason et al.
vs.
Smalley et al.

bond had been executed by him, until served with the writ in the aforesaid suit, that he took no part in the administration of the estate of Nason, but confided the same wholly to his associate John Nason, and that the orators have no effects of said Nason in their hands, but have fully administered, and that John Nason is wholly insolvent &c.

The bill prays that the judgment against the orators be set aside, and all further proceedings in this suit enjoined; that an account be taken, and whatever claim the respondents Smalley and Hickock may have against the estate of Nason, may be satisfied out of the real estate of William Nason,—for further relief &c.

The answer of Smalley alledges, that William Nason left a large estate, which went into the hands of his executors, that they did not represent his estate insolvent, and have never settled their accounts. That the orators suffered the lease-hold estate to be forfeited by non-payment of rent, with a view to make a title in said John Nason, to the exclusion of creditors, and have suffered the estate to go to decay &c.

That he is prosecuting said suit, for the benefit of the creditors of W. N. Ryan, who died in debt, and denies all knowledge of the agreement between Van Duzee and the orator Nason, and all authority in Van Duzee to make it. But admits that judgment was rendered for $5000 by consent and agreement of counsel in court, upon the proposition of the orator's counsel.

The bill was taken as confessed as against Hickock, and the answer of Clark, relating to his interest under the mortgage, is not necessary to be noticed.

The proof did not materially vary from the allegations of the bill and answer, which were found to be substantially true. The particulars in which the proof fell short of the allegations, so far as they are important are noticed in the opinion of the court.

*Beardsley for orators.*
*Smalley pro se.*
*A. G. Whittemore for Clark.*

The opinion of the court was delivered by

PHELPS, J.—This bill appears to have been drawn with a twofold purpose; its object being, first to set aside or enjoin perpetually the judgment at law upon the executors bond, and in this aspect, is a controversy between the orators and the defendants Smalley and Hickock, who represent the devisees of Daniel Ryan; and secondly, in case it fails in this object, to subject the es-

16

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

tate of William Nason, which passed by devise to John Nason, and from him to the defendant Clark, to the payment of the debt or claim of the other defendant; and, in this respect, the controversy arises between the orators and the defendant Clark. The question with Clark depends altogether upon the decision of the question between the other parties to the suit; for, if it should be found, that the other defendants can not sustain their judgment, it becomes unnecessary to enquire, whether the estate can be followed, in the hands of Clark, and subjected to payment of the testators debts. On the other hand if the judgment can equitably be enforced, the question would then arise, whether the orator Evarts is entitled to charge the estate in the hands of the purchaser, in order to exonerate himself.

The question whether the defendants are entitled to retain their judgment resolves itself into two distinct enquiries; the first growing out of the manner in which the judgment was obtained, and the second having reference to the intrinsic merits of their claim. Although the judgment may have been obtained in such a manner, that it ought not, in itself considered, to bind Everts, yet it would be idle to interfere, if the debt, thus in fact established, be just and equitable, or if the party must be left at liberty to prosecute anew, and a court of law would be compelled hereafter to render a like judgment.

There can be no doubt, that the judgment was entered in pursuance of the written agreement between Nason and Van Duzee. The defendant Smalley, although he repudiates the agreement, and denies all knowledge of it at the time, admits that the judgment was entered by agreement of counsel, and upon a proposition emanating from the counsel of Nason. No enquiry appears to have been made, as to the amount of the supposed divestavit, or the extent of the claimant's interest in it, but the judgment was for the penalty of the bond. This proceeding was wholly unaccountable, except upon the supposition of an agreement between the parties, and in the absence of all proof or even allegation of any other and different agreement, we must assume it to have been done in pursuance of the written agreement produced.

The question then turns upon the effect of this agreement, and the operation and effect of the judgment obtained in pursuance of it, viewing the transaction with the eye of a court of equity, and in reference to the power of that court to control the use which may be made of it.

The agreement in question may be viewed, either as a valid

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

and unexceptionable agreement, which may be conscientiously enforced, or as fraudulent in its conception and purpose, and void, to a certain extent at least, both at law and in equity. Upon the first supposition, we must treat the transaction as binding in all its parts, at least upon the immediate parties to it, and we must treat the judgment as qualified, so far as concerns the use to be made of it, by the co-temporaneous agreement of the parties. It requires no argument to prove that Van Duzee can be permitted to enforce the judgment in no way inconsistent with his contract.

A question however is raised, whether the defendants are bound by that agreement; and on this point, it may be well to notice the relation of these parties. Smalley as administrator of the estate of W. N. Ryan must be regarded in this court as a mere trustee, and as recovering in this case for the benefit of the creditors of W. N. Ryan, if any, in the first instance, and for the heir in the next, which heir Van Duzee represents—Smalley is therefore the trustee, and Van Duzee represents one of the cestui qui trust, perhaps the only one. There is therefore a privity between them, the one representing the legal estate or interest, and the other the equitable, and ultimately beneficial interest. Hickock may be considered either as having no interest in the recovery, in which event he may be laid out of the case, or as having an equitable interest in the subject matter of the controversy, and standing in the same relation to Smalley as Van Duzee. In this view of the subject, Hickock and Van Duzee have a joint or common interest, as representing the two residuary legatees of Daniel Ryan, and are to be equally benefitted by the recovery at law. The creditors of William N. Ryan, if any, sustain a similar relation to Smalley as their trustee and a similar relation to Van Duzee as being interested in the same trust. In these persons whom I have enumerated, rests the whole legal and equitable interest in the recovery, and they are the only persons whose rights are involved on the part of the defendants, or whose rights are entitled to consideration.

It is said that neither Smalley, nor the other cestui qui trust, are bound by this contract. So far as Smalley is a trustee for Van Duzee, he doubtless would be bound; for if Van Duzee is himself bound by the agreement, Smalley would not be permitted to pursue the judgment in violation of that agreement, for his, Van Duzee's, benefit. But with this exception, and so far as Smalley represented other equitable interests, it must be conceded that neither he, nor his cestui qui trust, would be bound. Granting however to these persons, the right to repudiate the contract, a serious

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

question arises, whether they must not repudiate it in toto, and with all its consequences. Can they avail themselves of it, and of what is done under it, as being beneficially interested, without adopting it in toto? Can they derive an incidental, perhaps an inequitable advantage from it, and still reject those stipulations, upon the faith of which the judgment was submitted to? We think not. In our judgment the common principle of election applies, that if they adopt or reject, they must adopt or reject in toto. The judgment is a part of the fruits and consequences of the contract.

It was tendered upon certain terms and conditions—to be enforced only in a particular manner, and, if accepted, must be accepted upon those terms. In equity, it is not to be regarded as the act of the court, but as the act of the parties. Van Duzee acted in behalf of all interested, and they must adopt his acts as they are, or not at all. They are not indeed to be prejudiced by his acts, but unless they choose to adopt them, they must stand upon the original merits of their claim. If they seek an adventitious advantage from the judgment, they must take it with all restrictions. This agreement applies as well to those jointly interested with Van Duzee, as to Smalley, who, in equity, is their instrument, and has no right but theirs. In short the trustee is bound in equity by the act of the *cestui qui* trust, and those interested with him, if they adopt his acts, and if not, they can claim no benefit from them.

But this case deserves consideration in another aspect. There is a strong presumption, arising upon the case that the whole transaction was a fraudulent contrivance, to enable Nason to defeat the title of his own grantee, and to reclaim the land mortgaged to the defendant Clark, to the exclusion of that mortgage. At least, it is apparent that this was one object, and that the judgment was entered for a much larger sum than was due to the prosecutor, for this purpose.

What then is the effect of this fraudulent contrivance? A contract designedly in fraud of third persons, is as a general rule, good as between the parties to it. Still equity will not enforce such a contract while executory, nor, on the other hand, will it relieve the fraudulent party against his own contract. On this ground, if Nason alone had sought relief it would probably have been denied him, as equity would not relieve him from the consequences of his own fraudulent acts. But it is one of the great purposes of equity jurisdiction, to relieve the party who is the object of the fraud,

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

Although the immediate object, in this transacsion, may have been to defraud the grantees of Nason, still the entering up of a judgment against Everts, to be in any event enforced against him, was as gross a fraud upon him as can well be conceived. On the face of the proceeding, it is apparent that a great share of that judgment was not due to the prosecutor, but was intended for the exclusive benefit of Nason. To permit the judgment to be enforced as against Everts, under such circumstances, would be to permit the principal to recover the debt out of his own surety ; for Nason being the acting executor, and guilty of the devastavit, if one was committed, must be regarded as principal, and Everts his associate stands on the footing of a surety. Indeed it is worse, for as the supposed debt must be taken to be fictitious, it is no less than submitting to a fictitious judgment to be enforced against Everts for the benefit of Nason. Such is the transaction on the face of it. And it does not vary the case, if we suppose that the design in the outset was not to enforce the judgment against Everts, but simply to create a title to the land alluded to in the agreement. If the enforcing the judgment against Everts was an after thought, it is equally fraudulent in its nature and effect.

Everts therefore is entitled to relief as the party aggrieved, unless he be so far implicated in the fraudulent purpose, as to subject him to the vindictive rule of law, which denies relief to the fraudulent party. It does not however appear, that he had any notice of the proceeding, until long after it took place. The most that can be made out is, that his counsel in the suit at law had knowledge of the agreement, and it is insisted that this constructive notice is sufficient to preclude his claim for relief. But the counsel in the suit probably followed the directions of Nason, and under the circumstances, there is no very strong presumption that they consulted Everts on the subject, At all events, we think the presumption not sufficient to establish notice in fact, and mere constructive notice is not sufficient, so to implicate the party in the fraudulent and culpable design as to preclude him on that ground from ordinary equitable relief.

We are therefore of opinion, that the defendants can claim no advantage by reason of their judgment at law, but if that judgment be retained at all, it must be upon the original merit of their claim, and as a security for what may be equitably due.

With a view to this branch of the case, the bill has been referred to the master to take the account, and ascertain how far there are assets of William Nason in the hands of the orators. His re-

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

port shows nothing in their hands, and if they have no assets, then there can be no equitable reason for keeping the judgment on foot.

It is insisted however that there are two grounds upon which the judgment may be left in force, viz:

1. That the real estate, devised by William Nason to John Nason, may be treated as asset in the hands of the executors.

2. That they have been guilty of a devastavit, in relation to the lease hold estate, forfeited for non payment of rent.

As to the first, we think it unnecessary to enquire, whether the creditors may pursue the estate in the hands of a *bona fide* purchaser, or how far a lien upon it may exist.   The question here is, whether the lands are now to be treated as assets in the hands of these executors, and whether Everts is responsible for the value of those lands, under the circumstances of the case.   Originally, without doubt, those lands were assets for the payment of debts, and were subject to the disposal of the executors for that purpose. They were devised to the orator John Nason, who was one of the executors, subject however to the contingency of being required for the payment of debts, and the question is, how long they are to be considered as held in trust by the executors, and when Nason alone would become seized in his right as devisee.   This question is important, as whenever the period should arrive, when Nason might assert his right as devisee to aliene the land absolutely, the power of the executors as such must necessarily cease, and their trust, with its corresponding liability, must be determined.

At common law, no question of this kind would arise.   The real estate, not being assets in the hands of the executor, but the heir being liable by reason of the inheritance, he of course was liable in the outset, to the extent of the inheritance, and the only question which could arise was, as to the right of the creditor to follow the inheritance, in the hands of strangers.   Under our system, land being assets in the hands of the executor, and the principle of inheritance and the power of devising being recognized, various questions have arisen, as to the appropriate remedy, in given cases.   In the first instance, there is a remedy against the heir or devisee, and lastly a supposed remedy, by way of lien on the estate in the hands of the purchaser.

The probate act of 1797, by which this case was governed, was defective, in not designating precisely at what period the liability of the executor or administrator should cease, and that of the heir or devisee should accrue ; a defect which is supplied by the act of 1821, which requires a decree of the probate court to divest the

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

right of the executor, or administrator, and to vest the estate in the heir or devisee ; and at this period, the corresponding liability to creditors is transferred. In this omission in the old act, the difficulty of this case originates. On the one hand, it seems improper that the right of the heir or devisee should be suspended, so long as there is a possibility that claims against the estate should arise, and, on the other hand, there is no good reason for holding the executor or administrator responsible for the supervenient claims, after the estate has gone to the heir or devisee, and been by him aliened. With respect to claims susceptable of liquidation at the time of the testators decease, there is no hardship in holding the executor responsible for their payment, especially as he may compel the holders to present them within a limited period, or submit to be barred. But with respect to claims, like the one in question, which may originate at an indefinite period afterwards, it is difficult to lay down a general rule sufficiently satisfactory and explicit.

We know of no better rule on this point, than this, whenever all debts due from the testator, at the time of his decease, with charges of administration, &c. and all specific legacies shall have been paid then the estate is to be considerod as vesting absolutely, by force of the devise, and the power of the executor as such ceases. Unless, indeed, he have notice, in the mean time, of claims subsequently accruing, which renders it his duty to retain his authority over the assets. At all events, if the devisee alien the estate after this period, without any notice to the executors of such supervenient claims, there is no doubt, that the alienation is valid, so far at least as to sustain the plea of *plene administravit*.

In this case, the testator died in 1810. All claims against his estate, (this only exepted) must be presumed, at this day, to be satisfied. This claim was put forth, for the first time in 1826, sixteen years after the decease of Nason. Can it be required of Everts to maintain his authority over the estate for this period, and shall the right of Nason, as residuary devisee, to dispose of the estate, be thus suspended ?

In our opinion, this would extend the liability of the executor too far. When Nason conveyed the estate in 1820, we see not how Everts could resist the alienation ; and if so, we can discover no reason why the land should now be considered assets in his hands, or he as guilty of a devastavit.

The defendants must be left to their remedy against Nason, as devisee or *hæres factus*, or, if they can establish their right so to do, to pursue their remedy against the land in the hands of the purchaser.

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley et al.

As to the supposed devastavit in relation to the leasehold estate, the point is already disposed of. The forfeiture of the estate took place long after the period, when we consider Everts to have been discharged from all responsibility in regard to the land, and the payment or non payment of the rents was a matter which concerned Nason alone.

We think therefore that there is, in equity, no liability on the part of Everts to sustain this judgment—that the entering ¡up of the judgment was a fraud upon him—in short, that the judgment can not, *proprio vigore*, bind him, nor can it be permitted to stand as a security, there being no liability to be enforced. Whether the judgment ought not to stand as against Nason, is a more serious question.

Viewing the question with reference to the immediate parties to it, viz, Nason and Van Duzee, and without reference to the rights of third persons, it would seem that the judgment ought not to be retained except upon the footing of the contract.

Still Nason is undoubtedly liable, to some extent, and in some way, as the executor of Ryan; and the judgment might stand against him, as a security for the liability. Were he the only person whose rights are implicated, there would perhaps be no reasonable objection to suffering it to stand for that purpose. But if it remain, it remains a judgment against him as executor of William Nason. What consequences direct and immediate, or remote and contingent, might flow from this judgment, it is impossible at this time fully to anticipate. Whether it might not serve as the basis of a suit against his sureties as executor of William Nason, or a proceeding of some kind against that estate in the hands of other devisees, or *bona fide* purchasers, are questions which we are not prepared to answer.

The judgment was entered at random, and doubtless for a sum far exceeding what was due. Should it be permitted to remain in force, to serve as a basis for further proceedings, it is doubtful whether persons subsequently liable could be permitted at law to contest it, and thus the grossest injustice might be done.

The argument against relieving Nason is, that he seeks relief from his own fraudulent contract. But in this case the judgment is *de bonis testatoris*, and it is necessary to enjoin the judgment, in order to obviate the fraud, the consequences of which will otherwise fall upon the estate. If execution should issue upon that judgment, and be levied upon the lands in the hands of Clark as mortgagee, the question of lien would then arise, and, should the lien be es-

FRANKLIN,
January,
1836.

Nason et al.
vs.
Smalley, et al.

tablished, the defendant Clark would be without remedy at law, and the property would be taken from him, for a debt, which we are bound to consider as, to a great extent, fictitious.

The doubt on this point arises from the circumstance, that Nason is one of the orators. Had he been made a defendant, there can not be a doubt that the judgment would be enjoined, and we do not see, that his being made co-plaintiff debars the other parties from the relief, to which they are clearly entitled. Should we dismiss the bill, on this ground, the defendant Clark would doubtless become the orator, and, upon his application, the judgment must unavoidably be enjoined.

As to the defendant Clark, there is no ground for a decree against him. He was made defendant, and a temporary injunction granted upon his suit, with a view to a supposed lien upon the land in case the orator Everts was made liable in the suit at law; but, as the proceeding at law will be enjoined, there is no necessity of discussing that lien, or continuing the injunction upon Clark. That injunction is therefore dissolved, and Clark dismissed with his costs.

And the other defendants are perpetually enjoined from proceeding upon their judgment at law, either against the orators, or against the estate of W. Nason, or persons interested therein.