JOHN C. COOLIDGE *v.* WARREN R. TAYLOR AND TRUSTEE.

October Term, 1909.

Re-argued May Term, 1911.

Present: ROWELL, C. J., MUNSON, AND WATSON, JJ.

Opinion filed August 29, 1911.

*Taxation—Collection—Trustee Suit—Evidence—Opinion Evidence —Impeaching Assessment—Collateral Attack—Declaration of Parties—Self-serving Declarations—Antedating Controversy —Residence—Objections to Admissibility of Evidence—Sufficiency—Harmless Error—Hearsay—Instructions—Conformity to Evidence—Effect of Evidence—Trustee Process—Property Liable—Descent and Distribution—Action by Heirs—Right of Action—Reversal of Judgment against Trustee—Effect.*

The record of the warning of an annual town meeting is *prima facie* evidence that the warning was posted as required by statute.

In a "trustee suit" for the collection of taxes, it was not error to allow witness to testify that defendant lived in a designated town in a certain year; as the word "live" does not state the ultimate fact of residence, but only a fact bearing on the question of residence.

In a "trustee suit" for the collection of taxes assessed in a designated town in a certain year, it was proper to ask a witness about seeing defendant in that year at the family homestead in that town.

In a "trustee suit" for the collection of taxes assessed against defendant in a designated year, it appeared that the listers made defendant's list that year because he did not return an inventory, though requested, and appraised his taxable property and doubled it and further assessed him $10,000. On cross-examination of the lister who had testified how the list was made, he was asked on what he based the $10,000 assessment, which question was excluded, whereupon defendant offered to show that the assessment was made arbitrarily and maliciously, which offer was excluded. *Held,* that this evidence as to malice did not tend to impeach the assessment; nor could the action of the listers in that behalf be collaterally impeached in the way offered, as the listers acted judicially in making such further assessments, and so the ordinary rule as to collateral impeachment of judgments applies.

An official stamped envelope, whereon was printed a request to return to defendant at a designated town, was not admissible in evidence to show that defendant resided in that town, even if it appeared that defendant was personally there, as defendant's presence there was not such an act that rendered the envelope admissible as explanatory of the act.

An official stamped envelope, whereon was printed a request to return to defendant at a designated town, was not admissible in evidence to show that his residence was in that town, where it was not shown that the envelope antedated the controversy.

In a "trustee suit" to collect taxes assessed against defendant in Plymouth in 1898, defendant's evidence tended to show that he moved from Plymouth to Sherburne in 1888, where he resided until he moved to Woodstock in March 1898. Plaintiff put in evidence a certified copy of the record of a judgment rendered in his favor in May, 1897, in an action against him by defendant for false imprisonment, in which plaintiff justified as collector of taxes for Plymouth under a rate bill and warrant from the town treasurer against delinquent taxpayers, of whom defendant was one. *Held,* that the judgment was not admissible to show that defendant's residence was in Plymouth on April 1, 1889, and not in Sherburne, since it did not appear that defendant's poll was taxed in Plymouth that year nor the nature of his property taxed there, as goods, stock in trade, and some other kinds of personal property are, by exception, listed in the town where the property is situated, and not in that of the owners' residence.

An exceptor will be confined in the Supreme Court to the objection that he stated below.

In a "trustee suit" to collect taxes assessed against defendant in the town of Plymouth in 1898, wherein defendant claimed that he lived in Sherburne from 1888 to March 1898, when he moved to Woodstock, plaintiff was properly allowed in rebuttal to show by a lister and by the grand-list that defendant's list was not taken in Sherburne in 1897.

Any error in allowing plaintiff to show a certain fact was harmless to defendant where he claimed that the fact was as shown by plaintiff.

In a "trustee suit" to collect taxes assessed against defendant in 1898, where there was an issue as to defendant's claim that he had no interest in a certain farm, the milk book of a cheese factory purporting to show the delivery of milk to it from the farm in 1897 in defendant's name, and the testimony of the secretary of the factory based thereon, he merely having transcribed the entries from the daily memoranda of the cheese maker showing the milk delivered, as to the correctness of whose memoranda the secretary knew nothing, and nothing was otherwise shown as to their correctness, were hearsay and inadmissible in evidence; the general rule being that, to admit entries made by private persons in the ordinary course of business, in addition to being contemporaneous, they must have been made by persons having personal

knowledge of the facts and be corroborated by their testimony if accessible, or, if dead or beyond the reach of the court, by proof of their hand-writing.

To reserve an available exception to the exclusion of a question in direct examination of a witness an offer must be made.

Requested instructions which are so framed as to allow the jury to determine whether there was any evidence on the question thereby presented were properly refused.

The right to tax one in a particular town on his poll or personal property depends on his residence there, and not on a demand by the listers of an inventory.

In a suit begun by trustee process, in order to hold the trustee the fund in his hands must belong to the defendant in his own right, and not as administrator.

Under our statute, the descent of intestate property, real and personal, is cast at once on the death of the ancestor, subject to the lien on the administrator when one is appointed.

When an administrator has performed all the duties by reason of which a lien is given him on the intestate property, that lien is discharged, and the heirs hold the estate acquit of him and his lien; so that where there were no debts of the estate when defendant, the only heir, was appointed administrator, what he collected on a note that was the only asset coming into his hands belonged to him personally and not to the estate, as also did both the land of which the intestate died seized, and payments on the note in the hands of the person employed to collect the remainder thereof, which payments were, therefore, subject to trustee process in a suit against defendant, and no administrator's lien was created on that fund by the subsequent appointment of another administrator who paid taxes on the land.

In a suit begun by trustee process reversal of a judgment against the trustee is necessitated by the reversal of the judgment against the principal defendant, for the former judgment is a mere incident of the latter.

Where defendant in a "trustee suit" to collect taxes assessed against him in a designated town withdrew on trial "any claim as to his residence in 1889 not being in" that town, this was equivalent to a judicial admission of that fact so as to obviate the necessity of proof thereof.

Any error in the admission of evidence to prove a fact that defendant formally admitted was harmless to defendant.

The mere fact that a company engaged in cheese making is a voluntary association does not make its patrons members thereof and so partners.

One cannot be made a member of a partnership without his express or implied consent.

In a "trustee suit" to collect taxes assessed against defendant in 1898, where there was an issue on defendant's claim that he had no interest in a certain farm, the milk book of a cheese factory purporting to show the delivery of milk to it from the farm in 1897 in defendant's name,

and the testimony of the secretary of the factory based thereon, he merely having transcribed the entries from the daily memoranda of the cheesemaker showing the milk delivered, as to the correctness of whose memoranda the secretary knew nothing, and nothing was otherwise shown as to their correctness, were mere hearsay, and the book was not admissible on the ground that it was used by the secretary, who was also treasurer, in computing dividends on the milk delivered by patrons, so that it could be used by him to refresh his recollection.

Even if the cheese book related to a collateral matter, and not within the best evidence rule, it would not have been admissible, for the question was not one of degree, but of admissibility regardless of degree.

In the trial of a cause, the mere fact that a party or his witness, on demand of the other party, produces and delivers to him a book or document, that the latter does not peruse or examine, does not make the book or document admissible in evidence in favor of the party so producing and delivering.

ASSUMPSIT for the collection of taxes, begun by trustee process. Plea, the general issue. Trial by jury at the June Term, 1907, Windsor County, *Waterman,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The facts determinative of the trustee's liability were found and reported by a commissioner. The opinion states the case.

*Davis & Davis* and *Frank A. Walker* for the defendant and trustee.

It was incumbent upon plaintiff to prove that all proceedings in assessing and collecting this tax had been strictly according to law. This included the warning of the town meeting at which the tax was voted and the officers elected. *Brush* v. *Watson,* 81 Vt. 43; *Collamer* v. *Drury,* 16 Vt. 574; *Downing* v. *Roberts,* 21 Vt. 441; *Hathaway* v. *Goodrich,* 21 Vt. 65; *Spear* v. *Tilson,* 24 Vt. 420; *Shaw* v. *Peckett,* 25 Vt. 423; *Downer* v. *Woodbury,* 19 Vt. 329; *Wheelock* v. *Archer,* 26 Vt. 280; *Haines* v. *School District,* 41 Me. 246; *Rideout* v. *School District.* 1 Allen 232; *People* v. *Castro,* 39 Cal. 65; *Sherwin* v. *Bugbee,* 16 Vt. 439; *Greenbanks* v. *Boutwell,* 43 Vt. 207.

Defendant had a right in cross-examination of the lister to show that the assessment of $10,000 was arbitrarily and

maliciously. made.   *Taylor* v. *Moore*, 63 Vt. 68; *Bullock* v. *Guilford*, 59 Vt. 520; *Howes* v. *Barrett*, 56 Vt. 141; *Rowell* v. *Horton*, 58 Vt. 1; *Weatherhead* v. *Guilford*, 62 Vt. 327; Freeman on Judgments §517; *Smith* v. *Bank et al.*, 81 Vt. 326; *Preston* v *King*, 61 Vt. 606; *Gregory* v. *Bugbee*, 42 Vt. 480; *Fulham* v. *Howe*, 62 Vt. 394.

*William W. Stickney, John G. Sargent* and *Homer L. Skeels* for the plaintiff.

The cheese book was properly admitted in evidence because it was used by the witness as a memorandum to refresh his recollection, and because it was not directly in issue, but related to collateral matter.  Evidence relating to matter· that does not form the foundation of the cause, but is collateral to the issue, does not properly fall within the best evidence rule.  17 Cyc. 469.  The book was also admissible because for the year 1897 defendant was a patron of the cheese factory, which was a voluntary association, and so its patrons were partners.  *Foster et al.* v. *Ives*, 53 Vt. 458; *Tabor* v. *Herrick*, 54 Vt. 630.  The book was also admissible because of defendant's demand to produce it, its production, and defendant's examination thereof.  1 Greenl. Ev. 563; 1 Thomp. Trs. 816; *Clark* v. *Fletcher*, 1 Allen 53; *Long* v. *Drew*, 114 Mass. 77.

ROWELL, C. J.   This is a statutory "trustee suit" for the collection of a tax assessed against the defendant on  his  grand list in Plymouth in  1898.

The record of the warning of the town meeting in March of that year was *prima facie* evidence that the warning was posted as required by statute.  *Lemington* v. *Blodgett*, 37 Vt. 210.  So here was proof that this first step was taken according to law, which was enough, there being nothing to contradict it.

It was not error to allow one of plaintiff's   witnesses to say that the defendant lived in Plymouth in 1898, for the word "live", as used in the question, was not asking for the ultimate fact of residence, but only for an index of that fact, which was proper.  *Mann* v. *Clark*, 33 Vt. 55.  And for the same reason it was competent for the plaintiff to ask the witness about seeing the defendant that year at the Taylor homestead in Plymouth.

The listers made the defendant's list that year because he did not, though requested, return an inventory. They ascertained his taxable property as best they could, appraised it, and doubled the amount, and then further assessed him $10,000. Spaulding, one of the listers, testified how the list was made. On cross-examination he was asked what he had to base the 10,000-dollar assessment upon. The question was excluded. The defendant then offered to show that said assessment was made arbitrarily, without any foundation, out of malice towards him, and with a determination to injure him in the matter of his assessment in Plymouth. This was also excluded. The imputation of malice and a determination to injure, add nothing to the substance of the offer for the only evidence vouched for therein is the impeachment of the assessment, and they can not influence that question. Nor can the action of the listers in this behalf be collaterally impeached in the way offered. This is shown by *Fulham* v. *Howe*, 60 Vt. 351, 14 Atl. 652, in which this precise question was so ruled, on the ground that listers act judicially in making such further assessments, and consequently the ordinary rules as to the collateral impeachment of judgments applies.

The defendant claimed, and his evidence tended to show, that his taxable residence was in Woodstock the first day of April, 1898, whither he moved from Sherburne in March of that year. It appeared that he hired a box in the Woodstock post-office, and held it during that year, and received his and his wife's mail through that office. As a declaration of his residence, and as tending to show that it was in Woodstock as claimed, the defendant offered in evidence an official one-cent stamped envelope, whereon was printed, "Return to Warren R. Taylor, Woodstock, Vt.," and in that connection offered to show that such envelopes were in use by him after he moved to Woodstock. The envelope was excluded, and properly, for as a declaration it was not admissible unless accompanied by an act that was itself admissible, and the personal presence of the defendant in Woodstock cannot be regarded as an act that rendered the envelope admissible as explanatory of its character. Nor does it appear that the envelope antedated the controversy, which was essential to its admission as a self-

serving declaration.  *Fulham* v. *Howe*, 62 Vt. 386, 20 Atl. 101.

It is claimed that it was error to allow the plaintiff to testify in rebuttal how milk from the Taylor farm was entered at the cheese factory in different years, because it appeared on cross-examination that he had no personal knowledge as to the delivery of milk from that farm in any of those years, but got his information from the books and memoranda kept from time to time by others at the factory.  But the cross-examination did not disclose that he had no personal knowledge as to the delivery of milk from that farm, but disclosed the contrary, as did the examination in chief.  This being the only thing urged under the exception, the ground of which does not appear, it is not sustained.

The defendant claimed, and his evidence tended to show, that he moved from the Taylor farm in Plymouth to Sherburne in the spring of 1888, and resided in Sherburne till he moved to Woodstock in March, 1898.  In rebuttal the plaintiff introduced in evidence a certified copy of the record of a judgment in his favor, rendered at the May Term, 1897, of Windsor County court, in an action of trespass for false imprisonment in favor of the defendant against him, in which he justified as constable and collector of Plymouth under a warrant and rate bill received from the treasurer of said town against delinquent taxpayers, of which the defendant was one.  Said copy was received to show that this defendant's residence was in Plymouth on the first day of April, 1889, and not in Sherburne, as he claimed, and the plaintiff says that that judgment conclusively settled that question as between him and the defendant.  But that judgment does not settle the fact that the defendant's residence was in Plymouth the first day of April, 1889, for he might have been properly taxed in Plymouth though he resided in Sherburne, as it does not appear that his poll was taxed in Plymouth that year, nor what the property was that was taxed there. Now taxable real estate is to be set in the list in the town where it is situated, though taxable personal estate is, in general, to be set in the list to the owner in the town in which he resides; yet there are many exceptions to that, one of which is that goods, wares, merchandise, stock in trade, including stock used in

the business of the mechanical arts, and machinery used in manufacture, are to be set in the list to the owner in the town where the property is situated. So horses, asses, mules, neat cattle, and sheep, are to be set in the list to the owner, or if he resides out of the State, to the keeper, in the town in which they are last kept on the first day of April. So personal estate belonging to wards, not embraced in certain provisions of the statute, is to be set to the guardian in the town where the ward resides, if he resides in the State.

It is easy to see, therefore, the record not showing nor it otherwise appearing that the defendant's poll was set in the list, nor what proprty was taxed, that said judgment can not be said to settle that the defendant's residence was in Plymouth as claimed. It was harmful error, therefore, to admit it for that purpose.

The plaintiff was allowed to show in rebuttal that the defendant was not listed in Woodstock in 1897 nor 1898. There had been no claim made nor evidence given by the defendant that he resided in Woodstock at any time in 1897. The testimony was objected to as tending to mislead the jury, and as setting up an issue in rebuttal not made by the defendant in his defence. But that objection is not made now, but it is objected that if the defendant did reside in Woodstock the first day of April, 1898, it was not his duty under the statute to return an inventory unless thereunto requested by a lister, and that that not appearing, the fact that his name was not on the grand list of that year was of no evidentiary value. But the objection made below being abandoned, this cannot be substituted, and is not considered.

It was proper for the plaintiff to show in rebuttal by Mr. Plumley that the defendant's list was not taken in Sherburne in 1897, for the defendant had claimed, and given evidence tending to show, as we have seen, that he lived in Sherburne from the spring of 1888 to the time he moved to Woodstock in March, 1898.

It was not harmful error, if error at all, to let the plaintiff show by Mr. O'Neil that the defendant's list was not taken in Sherburne in 1898, for according to the defendant's claim it should not have been.

The grand list of Sherburne for 1897 was properly admitted for the same reason that Plumley's testimony was; and the admission of the grand list of that town for 1898 stands the same as does the admission of O'Neil's testimony.

The testimony of Mr. Wilson was excepted to because not in rebuttal. The court admitted it, but on what ground does not appear. It will, therefore, be taken to have been on the ground of discretion, which the court had a right to do, though the testimony was not in rebuttal.

It was error to admit the milk book of the cheese factory containing entries purporting to show the delivery of milk there in 1897 in the name of the defendant, and to admit the testimony of the secretary of the cheese company based thereon, who knew nothing about the correctness of the entries except that he transcribed them from daily memoranda kept by the cheese maker as the milk was delivered, and who was not called as a witness nor his absence accounted for.

It is not that the entries are not original because thus transcribed, but that the correctness of the memoranda was not shown by the person who made them, nor in any other way. Without this, the entries in the book, and the testimony of the witness based thereon, were mere hearsay. In *Chaffee* v. *United States*, 18 Wall. 516, 541, 21 L. ed. 908, the rule that governs the admissibility of entries made by private persons in the ordinary course of business is said to require, with some exceptions not included in that case, not merely that they shall be contemporaneous with the facts to which they relate, but that they shall have been made by persons having personal knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting if dead, insane, or beyond the reach of the process or commission of the court. And this, because the testimony of living witnesses personally cognizant of the facts of which they speak, given under the sanction of an oath in open court, where they may be subjected to cross-examination, affords the greatest security for truth; but that their declarations, verbal or written, must sometimes be admitted when they themselves cannot be called, in order to prevent a failure of justice, in which cases the admissibility of the declarations is limited by the necessity on which it is

based. *Connecticut Mutual Life Ins. Co.* v. *Schwenk*, 94 U. S. 593, 598, 24 L. ed. 294, is to the same effect. Mr. Wigmore says that there can be no doubt that the general principles of testimonial evidence should apply here as elsewhere, namely, that the person whose statement is received as testimony should speak from personal observation or knowledge, and that this principle has often been invoked in excluding entries made by a person who had no personal knowledge of the supposed facts recorded. But he suggests that this principle does not necessarily exclude all entries made by persons not having personal knowledge of the facts entered, and submits that where an entry is made by one person in the regular course of business, recording an oral or a written report made to him by one or more other persons in regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would, in the particular case, outweigh the probable utility of doing so. 2 Wig. Ev. §1530. But however that may be, this case does not come within that suggestion, but belongs to the same class as *Chaffee* v. *United States* and *Connecticut Mutual Life* v. *Schwenk*, to which we have referred. See also, 17 Cyc. 392, 394; *Kent* v. *Garvin*, 1 Gray, 148; *Stettauer* v. *White*, 98 Ill. 72, stated in *House* v. *Beak*, 141 Ill. 290, 33 Am. St. Rep. 307, 311, 30 N. E. 1065.

The exclusion of the question put to the defendant's daughter as to where her mother said she was going when she went away from the Taylor place on a certain occasion in January, 1899, can not be said to be error, as the examiner did not disclose what answer was expected.

The defendant submitted divers requests to charge, and excepted to the refusal of the court to charge as requested in the 4th, 5th, 6th, 12th, and 16th, and to the charge as given in respect to the matters involved in each of them.

The 4th and 5th requests, though numbered separately are practically one; and it is enough to say of them that they are bad because, if for no other reason, they are so framed as to leave it to the jury to say whether there was or not any

evidence on the point on which they are based, whereas it was for the court to say that.

The exception to the charge on the 6th request, because the court said that a certain thing was "no evidence" instead of saying that it was "not any evidence", as requested, is frivolous.

The 12th request asked the court to charge that it was incumbent on the listers of Woodstock to demand an inventory of the defendant before he could be lawfully assessed there for a poll or personal property on the first day of April, 1898. But the right to tax him in that town did not depend upon such a demand, but upon the question of his residence there. So it was not error to refuse the request.

The exception to the charge as given in respect to the matters involved in each of said requests is too general to be available.

As to the liability of the trustee. The defendant was the son and only heir of Reuben and Harriet Taylor. His father died intestate in 1887, and his mother was appointed to administer his estate. On March 27, 1888, having paid all the debts of the estate, she settled her administration account, and the balance found was distributed between her and the defendant. In her account she charged herself with a 100-dollar note against one Butler, "not collected". She died soon after, and the defendant was appointed administrator of her estate, and administrator *de bonis* of his father's estate, of which there was nothing to settle but to collect the Butler note. He settled his mother's estate, and it was decreed to him in December, 1889. He held the Butler note, and received payments thereon from time to time till a short time before the December term, 1899, of Windsor County Court, when he, as administrator, gave it to the trustee for collection, with the mortgage securing it. On May 26, 1899, the trustee collected $66.00 thereon, and on November 23, 1899, $276.13, and still holds the same. On January 5, 1901, Henry Taylor, son of the defendant, was, with the assent of his father, appointed administrator *de bonis* of Reuben Taylor's estate in place of his father, and appeared before the commissioner and claimed that his mother bought the Butler note of his father, but the commissioner did not so find. The defendant rendered

no account to the probate court during the time he was administrator of his father's estate, and there was nothing to account for except what he received on the Butler note. It is found that there is a small piece of real estate in Plymouth that still stands on record in the name of Reuben Taylor, and that Henry Taylor, as administrator, paid taxes thereon, and claims the fund in the hands of the trustee.

In order to hold the trustee, the funds in his hands must belong to the defendant in his own right. *Boyden* v. *Ward*, 38 Vt. 628, 639. In *Nason* v. *Smalley*, 8 Vt. 118, the orators, John Nason and Reuben Evarts, were executors of the will of William Nason, in which the orator John Nason was made residuary legatee and devisee, and under which certain land passed to him, and had passed from him to the defendant Clark. One object of the bill was to have that land declared to be an asset of William Nason's estate, and the question was, how long it was to be considered as held in trust by the executors, and when the orator John Nason would become seised thereof in his own right as devisee. This question was said to be important, because whenever the time came that he could assert his right as devisee to alien the land absolutely, the power of the executors as such would necessarily cease, and their trust, with its corresponding liability, would be determined. The case was governed by the probate act of 1797, which was said to be defective in not fixing the precise time at which the liability of the executor or the administrator should cease, and that of the heir or devisee should begin; a defect that was supplied by the act of 1821, which required, it was said, a decree of the probate court to divest the right of the executor or the administrator, and to vest the estate in the heir or the devisee. The court said that it knew of no better rule on that question than that, when all debts due from the testator at the time of his death, with charges of administration, etc., and all special legacies, are paid, then the estate is to be considered as vesting absolutely by force of the devise, and the power of the executor as ceasing, unless he has notice in the mean time of claims subsequently accruing that makes it his duty to retain his authority over the assets; and that, at all events, if the devisee aliens the estate after that time, without notice to the executor of such claim, the

alienation is so far valid as to sustain the plea of *plene adminis-travit.*

The statute of 1821, Laws of Vt., Slade's Ed., 346, sec. 63, related only to actions concerning land, and was long since modified by allowing heirs and devisees to maintain such actions without a decree of the probate court, if the personal representative surrenders possession to them, or the time allowed for the payment of debts has expired. P. S. 2838. And that statute was early construed to apply only to cases in which a division is necessary, and not to cases in which there is only one heir or devisee, and therefore can be no division. *Hubbard* v. *Ricart,* 3 Vt. 207, 23 Am. Dec. 198; *Abbott* v. *Pratt,* 16 Vt. 629.

Under our statute, and by force of it, the descent of intestate property, real and personal, is cast at once on the death of the ancestor, subject, of course, to the lien of the administrator when one is appointed. *Babbitt* v. *Bowen,* 32 Vt. 437; *Austin* v. *Bailey,* 37 Vt. 219, 86 Am. Dec. 703; *Alexander* v. *Stewart,* 50 Vt. 87; *Bridgman* v. *Railroad Co.,* 58 Vt. 198, 2 Atl. 467. And when the administrator has performed all and singular the duties by reason of which his lien is given to him, his lien is discharged, his authority as administrator terminates, and the heirs hold the estate acquit of him and his lien. *Nason* v. *Smalley,* 8 Vt. 118, 127.

So here, there were no debts against the estate when the defendant was appointed administrator, and, as the commissioner has found, there was nothing for him to do but to collect the Butler note, and when that was done, and the money come into the trustee's hands, it was the defendant's money in his own right, and not an asset of the estate. And it had laid in that way more than a year before his son Henry was appointed administrator in his stead, which was after this suit was commenced, and the land on which Henry paid the taxes belonged to the defendant as much as the money did. This being so, the lien of the defendant as administrator on the money in question was gone, if he ever had one, for a man cannot hold his own property in trust for himself alone, any more than he can hold a mortgage on his own land when the entire mortgage interest meets in him the equity of redemption. It follows,

therefore, that no lien was created on the fund by the appointment of another administrator.

We have thought it best to say this much about the liability of the trustee, notwithstanding the case has got to go back for another trial.

Question is made about the correctness of the judgment against the defendant in respect of the application of part of the fund on the tax, the costs being more than the amount for which the trustee is held. It is also claimed that it was necessary to cite in the defendant's wife and Henry as claimants before the trustee could be adjudged chargeable. But as the judgment against the trustee must be reversed, these questions are not considered. The reversal of that judgment is necessitated by the reversal of the judgment against the defendant, of which it is a mere incident, and the incident must follow the principal. Thus, in *Withington* v. *Southworth*, 26 Mich. 383, it is held that a judgment in an ancillary proceeding by garnishment falls when the judgment in the principal case is reversed. So in *Rowlett* v. *Lane*, 43 Texas, 274, it is held that as a judgment against a garnishee is dependent upon the judgment against the defendant, it falls when that is reversed. This question is fully discussed in the *Chicago Herald Co.* v. *Bryan*, 195 Mo. 590, 92 S. W. 906, 6 Ann. Cas. 751, and note.

*Both judgments reversed and cause remanded.*

MAY TERM, 1911.

The exceptions in this case having been amended after the announcement of the foregoing opinion and before entry of judgment of reversal and remand, bringing into the case further elements touching the two points ruled against the plaintiff, the case was continued on his motion for further argument on those points, which was had at this term. It now appears that the defendant's list in Plymouth in 1889 was made up of his poll; his real estate, valued at $2,400; and his personal estate,

valued at $11,600, which last amount was obtained by doubling and assessment.  It also appears that on trial of this case the defendant withdrew any claim as to his residence in 1889 not being in Plymouth,  thereby  virtually admitting that it was there.  This was a judicial admission of the fact, and bound the defendant, not being relieved from it, and rendered unnecessary any evidence on the part of the plaintiff to prove it.  *United States* v. *Fidelity Guaranty Co.*, 83 Vt. 278, 75 Atl. 280; 4 Wig. Ev. 2590 *et seq.*  Hence the admission of the certified copy of the record of the pleadings and judgment in the false imprisonment case was unnecessary and harmless, as its only purpose was to show that the defendant's residence was in Plymouth the first of April, 1889, and not in Sherburne as he claimed.  So if there was error in its admission, it does not vitiate.

As to the admission of the milk book of the cheese factory, purporting to contain entries of the delivery of milk there in 1897 in the name of the defendant, and of the testimony of the secretary of the company based thereon, it is now claimed that as the testimony tended to show that the company was a voluntary association and not a corporation, the patrons thereof must be taken to have been members of it and so co-partners and consequently that the cheese maker was their agent, and his memoranda of milk delivered, their memoranda, in law. But it cannot be said from the mere fact that the company was a voluntary association that the patrons became and were members thereof and therefore co-partners.  It does not appear that the company had any rules and regulations relating to membership  nor how one could become a member.  A man cannot be made a member of a company nor of a partnership without his consent, express or implied, and there is nothing here tending to show such consent by the defendant, except that he was a patron, which is not enough as matter of law. Thus, in *Tarbell* v. *Gifford*, 82 Vt. 222, 72 Atl. 921, it is held that the intent to become a member of an unincorporated society is not conclusively proved by the purchase and acceptance of a ticket conferring membership privileges, if the purchaser supposed, and had a right to suppose, that he was getting only an admission ticket, and did not know he was getting anything else.

It appears from the amended exceptions that the secretary of the company was also its treasurer and financial man, and received the avails of cheese sold, and distributed them to the patrons in proportion to the milk delivered by them, after deducting the cost of making. The plaintiff says in his brief now submitted, that the purpose for which the milk book was used by him was, not to establish the correctness of the account, but simply to show that milk was delivered from the Taylor farm to the cheese factory, and which member of the Taylor family was the patron or co-partner. But it was not usable for that purpose, as it was nothing but hearsay.

Before the book was received the plaintiff had introduced many checks drawn by the treasurer to members of the defendant's family that went to the defendant's use, and introduced evidence tending to show that for the year 1897 such checks were drawn to the defendant personally, and received and used by him. The plaintiff claims that the memorandum made by the treasurer in the book, increased the probative force of his testimony by connecting the checks drawn by him with the milk from the Taylor farm, and thus tended to rebut the testimony of the defendant's family, all of whom testified that the defendant had no interest in any of the property nor business located and done at the Taylor farm; and that the book as made by the treasurer was used by him as a basis for computing the dividends, and in connection with his testimony, and to · the extent used, was properly admitted, (1) because the witness could use it as a memorandum used by him at the time he made the dividends, to refresh his recollection; and (2) because it was not directly in issue, but related to a collateral matter, and so not within the best evidence rule.

But this claim still erroneously assumes that the book was evidence that milk was delivered from the Taylor farm. And as to refreshing recollection, it could refresh no further than to the fact that the witness made the entries in the book from memoranda kept by the cheese maker, about the correctness of which he knew nothing, Such a refreshing did not make the book admissible for what the plaintiff says it was used.

Nor does the fact, if it is a fact, that the book relates to collateral matter, and not within the best evidence rule, make

any difference, for this is not a question of degree, but of admissibility regardless of degree.

It is further claimed that the defendant's call for the book and his examination of it, made it admissible. But it does not appear that he examined it. This is how it was: The witness Moore, the secretary and treasurer of the company when recalled by the plaintiff in rebuttal, having said in his testimony in chief that he had the book with him, the defendant's counsel, on cross-examination, asked to see the book, and it was handed to him, but it does not appear that he examined it. Then, on redirect examination, the plaintiff offered it in evidence and it was admitted under exception. So there was no ground for claiming that the book was made admissible for the plaintiff by reason of what the defendant's counsel did, for none of the cases permit less than inspection to work that result. 3 Wig. Ev. §2125.

And finally it is claimed that the plaintiff introduced other sufficient evidence to show that the milk came from the Taylor farm, and which member of the Taylor family was the patron each year, and that therefore the book became immaterial and harmless, though erroneously admitted. But that cannot be said. The book went in with all the other testimony on those points, and the case affords no ground on which it can be said to be apparent that the verdict was not influenced by it to the defendant's prejudice.

*Let judgment of reversal and remand be entered as before ordered.*